**Danny MELVIN and Janet Melvin, Individually and as next friend of Shanie Melvin, a Minor, Plaintiffs,**

**v.**

**OLD BEN COAL COMPANY, a corporation, Defendant.**

**Civ. No. 84–4343.**

United States District Court, S.D. Illinois, Benton Division.

May 24, 1985.

Harold B. Culley, Jr., West Frankfort, Ill., for plaintiffs.

William W. Hart, Jr., Hart & Hart, P.C., Benton, Ill., for defendant; Campbell & DiVincenzo, Chicago, Ill., Edmund J. Moriarty, Mark M. Pierce, Stephen J. Birek, Jr., Old Ben Coal Co., Lexington, Ky., of counsel.

Mark A. LaRose, Asst. Atty. Gen., State of Ill., Springfield, Ill., for Ill. Dept. of Mines & Minerals.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Before the Court is defendant Old Ben Coal Company's Motion to Dismiss plaintiffs' Complaint. Plaintiffs claim that defendant's longwall mining operation has caused the surface of the land owned and occupied by plaintiffs to subside, thereby resulting in damage to plaintiffs' dwelling, swimming pool, and outbuildings. Count I of plaintiffs' Complaint alleges a statutory claim for relief founded on Chapter 96½, ¶ 7904.02 of the Illinois Revised Statutes. Count II alleges negligence, and Count III alleges willful and wanton misconduct. In Counts IV, V, VI, VII, VIII, and IX, plaintiffs complain that defendant's conduct caused emotional distress and loss of consortium.

Defendant contends that its mining operations were not subject to ¶ 7904.02 at the time of the alleged violation for three reasons. First, according to defendant, the mine at issue was operating pursuant to an interim permit and therefore was not subject to provisions of the Illinois Surface Coal Mining Land Conservation and Reclamation Act requiring subsidence prevention. Second, defendant argues that ¶ 7904.02 does not apply to longwall mining because such technology involves planned subsidence. Third, defendant asserts that the language in plaintiffs' deed expressly waived the right to recover for any liability resulting from defendant's coal mining activities.

Congress enacted the Surface Mining Control and Reclamation Act of 1977, P.L. 95–87, 91 Stat. 445, 30 U.S.C. § 1201 *et seq.*, ("SMCRA"), which required that all coal mining operations in the United States be governed by federal coal mining reclamation regulations or, alternatively, by state reclamation laws and regulations which met federal standards and which were approved by the Office of Surface Mining Reclamation and Enforcement ("OSM"). The OSM promulgated federal coal mining reclamation regulations in two stages: (1) Federal Interim Program Regulations, 30 C.F.R. Subchapter B, §§ 710–725 (1977); and (2) Federal Permanent Program Regulations, 30 C.F.R. Subchapters A, C, D, F, G, J–L (1979). Illinois participated in the Federal Interim Program upon OSM approval of the Illinois Interim Coal Mining Reclamation Program, Act of August 11, 1978, P.A. 80–1342, 1978 Ill.Laws 1005. Neither the federal nor the state interim programs mandated subsidence prevention.

After the Federal Permanent Program Regulations were issued, Illinois enacted the Surface Coal Mining Land Conservation and Reclamation Act, Ill.Rev.Stat. ch. 96½, § 7901 *et seq.* (1983), ("Illinois Permanent Act"). The Illinois Permanent Coal Mining Reclamation Program, which includes the Illinois Permanent Act and the Surface Coal Mining Land Conservation and Reclamation Act State Program Rules and Regulations, was conditionally approved by the Secretary of the Interior on June 1, 1982. See 30 C.F.R. § 913.10 (1984); 47 Fed.Reg. 23883 (1982). Both the federal and the state permanent programs mandate subsidence prevention. 30 U.S.C. § 1266(b)(1); Ill.Rev.Stat. ch. 96½, ¶ 7904.02.

Defendant contends that because it is operating under an interim permit and has not yet been issued a permanent permit, it is not required to follow the performance standards for underground mining found in Article IV of the Illinois Permanent Act and in Parts 1810–1828 of the Permanent Program Regulations. Article IV of the Illinois Permanent Act, using substantially the same language found in the federal SMCRA, provides in part:

7904.01. General requirement.

§ 4.01. General Requirement. Each person conducting underground mining operations shall as a minimum comply with all applicable performance standards set forth in this Article. Each permit issued under this Act to conduct underground mining operations shall require as a minimum that such operations meet all applicable requirements set forth in this Article.

7904.02. Subsidence.

§ 4.02. Subsidence. Each operator shall adopt measures consistent with known technology in order to prevent subsidence causing material damage to the extent technologically and economically feasible, maximize mine stability, and maintain the value and reasonably foreseeable use of surface lands, except in those instances where the mining technology used requires planned subsidence in a predictable and controlled manner. Nothing in this Section shall be construed to prohibit the standard method of room and pillar mining.

■ The Court notes that ¶ 7904.01, set forth above, consists of two sentences: one mandates that "[e]ach person" comply with performance standards, and the other mandates that "[e]ach permit issued" shall meet all requirements of Article IV. It appears to the Court that the Illinois General Assembly clearly intended compliance with performance standards set forth in Article IV of the Illinois Permanent Act regardless of whether a permanent permit had been issued under the Act. To find otherwise would require the Court to completely ignore the first sentence in ¶ 7904.-01.

The Court further notes that ¶ 7904.02 requires "[e]ach operator" to comply with subsidence prevention standards. Defendant would have the Court interpret this language narrowly to mean that only "each permanent permittee" need comply. Had the Illinois General Assembly intended such a narrow reading of this language, it

could have expressly limited the applicability of the performance standards to permanent permittees. The Court, therefore, finds that the performance standards found in Article IV of the Illinois Permanent Act, on its face, are applicable to the operations of defendant Old Ben, as well as to the operations of all operators of coal mines in Illinois.

■ The Illinois legislature did not intend to establish requirements that are more stringent than federal requirements. Ill.Rev.Stat. ch. 96½, § 7901.02(c). The Court has examined the federal permanent regulation relevant to the instant case regarding subsidence control (30 C.F.R. § 817.121), has compared this regulation to the analogous Illinois regulations (62 Ill. Admin.Code §§ 1817.121, 1817.124), and has determined that the Illinois subsidence control provisions are substantially similar, and not more stringent, than the federal provisions.

Illinois subsidence control measures, including Article IV of the Illinois Permanent Act and §§ 1817.121 and 1817.124 of the Illinois regulations, were applicable eight months after the date of approval of the Illinois program by the Secretary of the Interior. 62 Ill.Admin.Code § 1700.11(f). As the approval date was June 1, 1982, the date the Illinois subsidence provisions were applicable was February 1, 1983. The fourth paragraph of § 1700.11(f) further provides that by February 1, 1983, an operator is required to "obtain a permit issued by the Department pursuant to the approved permanent program," subject to certain exceptions.

This Court has previously interpreted the transition section of the Illinois Permanent Act, ¶ 7909.08, as facilitating an orderly transition from the Interim Act by allowing interim permits continued viability, under certain circumstances, until permanent permit applications are acted upon by the Department of Mine and Minerals. *See Phillips v. Old Ben Coal Company*, No. 84–4442 (S.D.Ill. Sept. 21, 1984). In *Phillips,* the Court found that § 1700.11(b) and § 1771.11(a) of the regulations operated to avoid the unreasonable result of forcing operations under interim permits to shut down until permanent permits could be issued. Defendant would now have the Court interpret these provisions to reach the unreasonable result of authorizing it to ignore performance standards merely because the Department of Mines and Minerals is delinquent in processing permanent permit applications.

■ The permit requirements mentioned above provide:

§ 1700.11(b)

Any person who conducts surface coal mining and reclamation operations on or after 8 months from the date of approval of the State program or implementation of a Federal program shall have a permit issued pursuant to the applicable State or Federal program. However, under conditions specified in Section 1771.11(a), a person may continue operations under a previously issued permit after 8 months from the effective date of the State Act and these regulations.

§ 1771.11(a)

A person conducting surface coal mining operations, under a permit issued or amended by the Department in accordance with the requirements of the interim program, may conduct these operations beyond the prescribed period in Section above, if—

(1) Timely and complete application for a permit under the permanent regulatory program has been made to the Department in accordance with the provisions of the State Act, Parts 1770–1795, and the regulatory program. For the purposes of this Part 1771, a complete application is one on which the applicant has made an apparent good-faith effort to adequately address the portions of the application pertaining to the operation to be permitted.

(2) The Department has not rendered an initial decision with respect to such application; and

(3) The operations are conducted in compliance with all terms and conditions

of the interim permit, the requirements of the Act, the State Act, and Parts 1770–1975 of these regulations.

As this Court noted in *Phillips v. Old Ben Coal Company*, No. 84–4442 (S.D.Ill. Sept. 21, 1984), surface mining includes the surface impact of underground coal mining operations. *See* Ill.Rev.Stat. ch. 96½, § 4520(c) (1971); 30 U.S.C.A. § 1291; §§ 1.27, 1.29, 2.6 Illinois Interim Program Regulations. The language in § 1771.-11(a)(3) above expressly requires operators under an interim permit to conduct operations in compliance with the Illinois Permanent Act, which includes ¶ 7904.02 regarding subsidence prevention.

■ Defendant's contention that it is exempt from subsidence prevention provisions places great reliance on § 1700.11(c) of the regulations, which provides as follows:

> The requirements of Parts 1810–1828 of these regulations shall be effective and shall apply to each surface coal mining and reclamation operation which is required to obtain a permit under the Act, and the State Act on the earliest date upon which the Act, the State Act, and these regulations require a permit to be obtained except as provided in Paragraph (e) of this Section.

Defendant's logic, in essence, is that because it has been allowed to operate under an interim permit, it is not an "operation which is required to obtain a permit under the Act." The fact is, however, that defendant is operating under a permit authorized under the Act. *See Phillips v. Old Ben Coal Company*, No. 84–4442 (S.D.Ill. Sept. 21, 1984). Had defendant not been found to have met the conditions of § 1771.11(a), it may have been forced to shut down all operations for which a permanent permit application had not been processed and approved. To accept defendant's arguments in the instant case would be inconsistent with the Court's ruling in *Phillips*. For the foregoing reasons, the Court rejects defendant's argument that it is not required to follow performance standards under the Illinois Permanent Program.

■ Defendant argues that even if the Court finds that its operation under an interim permit requires compliance with the performance standards of the Illinois Permanent Act, defendant has not violated the subsidence prevention provision found at ¶ 7904.02 because it intentionally planned to subside plaintiff's property. According to defendant, all subsidence caused by longwall mining is automatically authorized under ¶ 7904.02 because longwall mining predictably causes subsidence. To accept defendant's analysis of ¶ 7904.02 would be to render the subsidence prevention provisions in the Illinois Permanent Act ineffective; operators would be required to prevent only accidental subsidence, but could engage in deliberate subsidence at will. The Court will not interpret ¶ 7904.02 to reach such an absurd result.

The interpretation of ¶ 7904.02 offered by defendant is not consistent with the regulations promulgated under the Illinois Permanent Program. The following regulations concern subsidence control:

> § 1817.121 Subsidence control: General requirements.
>
> (a) Underground mining activities shall be planned and conducted so as to make use of measures consistent with known technology in order to prevent subsidence causing material damage to the extent technologically and economically feasible, maximize mine stability, and maintain the value and reasonably foreseeable use of such surface lands, except those instances where the mining technology used requires planned subsidence in a predictable and controlled manner. Nothing in these regulations shall be construed to prohibit the standard method of room and pillar mining.
>
> (b) The person engaged in underground mining activities shall comply with all provisions of the subsidence control plan prepared pursuant to 1784.20 and approved by the Department.

§ 1817.122 Subsidence control: Public notice.

The mining schedule shall be distributed by mail to all owners of property and residents within the area above the underground workings and adjacent areas. Each such person shall be notified by mail at least six months prior to mining beneath his or her property and residence. The notification shall contain, as a minimum:

(a) Identification of specific areas in which mining will take place;

(b) Dates of mining activities that would cause subsidence and affect specific structures; and

(c) Measures to be taken to prevent or control adverse surface effects.

§ 1817.124 Subsidence control: Surface owner protections.

(a) Each person who conducts underground mining activities shall adopt all measures approved by the Department under 1784.20 to reduce the likelihood of subsidence, to prevent subsidence causing material damage or reducing the value or reasonably foreseeable use of surface lands, and to mitigate the effects of any such damage or reduction which may occur.

(b) Each person who conducts underground mining which results in subsidence that causes material damage or reduces the value or reasonably foreseeable use of the surface lands shall, with respect to each surface area affected by subsidence—

(1) Restore, rehabilitate, or remove and replace each damaged structure, feature or value, promptly after the damage is suffered, to the condition it would be in if no subsidence has occurred and restore the land to a condition capable of supporting reasonably foreseeable uses it was capable of supporting before subsidence; or

(2) Purchase, the damaged structure or feature for its fair market, pre-subsidence value and shall promptly after subsidence occurs, to the extent technologically and economically feasible, restore the land surface to a condition capable and appropriate of supporting the purchases structure, and other foreseeable uses it was capable of supporting before mining. Nothing in this paragraph shall be deemed to grant or authorize an exercise of the power of condemnation or the right of eminent domain by any person engaged in underground mining activities; or

(c) Each person who conducts underground mining activities will compensate the owner of any surface structure in the full amount of the diminution in value resulting from subsidence, by purchase prior to mining of noncancellable, premium prepaid insurance policy or other means approved by the Department as assuring before mining begins that payment will occur; indemnify every person with an interest in the surface for all damages suffered as a result of the subsidence and, to the extent technologically and economically feasible, fully restore the land to a condition capable of maintaining reasonably foreseeable uses which it could support before subsidence.

§ 1817.126 Subsidence control: Buffer zones.

(a) Underground mining activities shall not be conducted beneath or adjacent to any perennial stream, or impoundment having a storage volume of 20 acre-feet or more, unless the Department, on the basis of detailed subsurface information, determines that subsidence will not cause material damage to streams, water bodies and associated structures. If subsidence causes material damage, then measures will be taken to the extent technologically and economically feasible to correct the damage and to prevent additional subsidence from occurring.

(b) Underground mining activities beneath any aquifer that serves as a significant source of water supply to any public water system shall be conducted so as to avoid disruption of the aquifer and consequent exchange of groundwater between the aquifer and other strata. The Department may prohibit mining in the vicinity of the aquifer or may limit the

percentage of coal extraction to protect the aquifer and water supply.

(c) Underground mining activities shall not be conducted beneath or in close proximity to any public buildings, including but not limited to churches, schools, hospitals, courthouses and government offices, unless the Department, on the basis of detailed subsurface information, determines that subsidence from those activities will not cause material damage to these structures and specifically authorizes the mining activities.

(d) The Department shall suspend underground coal mining under urbanized areas, cities, towns, and communities, and adjacent to industrial or commercial buildings, major impoundments or permanent streams, if imminent danger is found to inhabitants of the urbanized areas, cities, towns, or communities.

An examination of the above regulations makes it clear that ¶ 7904.02 was not intended to authorize coal mine operators to unilaterally determine that they need not assume responsibility in any way for intentional and deliberate subsidence. Defendant's analysis of ¶ 7904.02 is clearly oversimplistic.

■ Defendant also asserts that because it had purchased mineral rights from plaintiffs' predecessor in title, who had waived the right to subadjacent support, defendant cannot be held liable for surface damage. Defendant cites to case law in support of its position dating as far back as 1880, and admonishes the Court not to "set aside a century of undisturbed Illinois law" upholding the validity of such waivers. The Court, however, considers that the Illinois legislature, by enacting the Illinois Permanent Act, has "disturbed" prior Illinois case law on the subject of subsidence control. The legislative declaration found in ¶ 7901.-02 of the Illinois Permanent Act sets forth the policy of the state as regards the effect of coal mining on lands. This policy expressly includes "protecting the health, safety and general welfare of the people." Ill.Rev.Stat. ch. 96½, ¶ 7901.02. To the extent that the waiver of surface support

conflicts with the policy of Illinois regarding subsidence control, the waiver shall be unenforceable.

■ The remainder of plaintiffs' Complaint seeks recovery for emotional distress and loss of consortium. To allow such recovery, however, would be inappropriate under Illinois law. In *Rickey v. Chicago Transit Authority*, 98 Ill.2d 546, 75 Ill.Dec. 211, 457 N.E.2d 1 (1983), the Supreme Court of Illinois substituted the "zone-of-physical-danger rule" for the prior standard requiring contemporaneous injury or impact. Under the new rule, a viable cause of action exists for a bystander who suffers physical injury or illness resulting from emotional distress even when the bystander did not suffer a physical impact or injury at the time of the tortious act. However, the new rule requires that the bystander "must have been in such proximity to the accident in which the direct victim was physically injured that there was a high risk to him of physical impact." *Rickey*, 98 Ill.2d at 550, 75 Ill.Dec. at 215, 457 N.E.2d at 5. In the instant case, the "direct victim" is plaintiffs' property, not an injured person. The analysis in *Rickey* would not apply to allow recovery for analysis in *Rickey* would not apply to allow recovery for emotional distress resulting from damage to property, and plaintiffs explicitly deny that they have asserted a claim for the intentional infliction of emotional distress (plaintiffs' Memorandum in Opposition to Old Ben Coal Company's Motion to Dismiss Plaintiffs' Complaint [Document No. 23], at p. 28). Therefore, the Court is compelled to dismiss Counts IV, V, VI, VII, VIII, and IX of plaintiffs' Complaint.

Accordingly, defendant's Motion to Dismiss is hereby GRANTED IN PART AND DENIED IN PART. Counts IV, V, VI, VII, VIII, and IX of plaintiffs' Complaint are hereby DISMISSED; said Motion is hereby DENIED as to Counts I, II, and III.

IT IS SO ORDERED.