THE COUNTY OF WINNEBAGO, Plaintiff-Appellee, v. NORMA DAVIS, Food Service Director, Lincoln Middle School, Defendant-Appellant.

Second District   No. 2—86—0880

Opinion filed June 3, 1987.

Steven P. Zimmerman and Robert A. Calgaro, both of Pedderson, Menzimer, Donde, Stoner & Killoren, of Rockford, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Charles J. Prorok, Assistant State's Attorney, of counsel), for appellee.

Neil F. Hartigan, Attorney General, of Springfield (Nancy Albert Goldberg and Roma Jones Stewart, Assistant Attorneys General, of Chicago, of counsel), for *amicus curiae*.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Norma Davis, food service director of Lincoln Middle School, appeals from an order in which she was found to have violated certain provisions of the Winnebago County code. She was fined

$1 and ordered to pay court costs. On appeal, she contends that regulation of schools, including school cafeterias, is vested in the State Board of Education and therefore the cafeteria is not subject to regulation through the local health code. We have allowed the Attorney General to file an *amicus* brief.

Plaintiff, County of Winnebago, filed a three-count complaint alleging that defendant, in her official capacity as food service director, violated certain provisions of the Winnebago County code, in that defendant failed to keep food stored at the temperature required by the code, in that defendant failed to protect against backflow and backsiphonage by properly installed equipment in violation of the Winnebago County code, and in that she failed to provide a dishwasher capable of maintaining the temperature required by the code. Count I was later dismissed, with the parties stipulating to the facts in count II and count III. The court was then presented with a question of law as to whether the county could regulate school cafeterias through its code.

In a memorandum opinion, the trial court noted that defendant, acting in her official capacity, was entitled to the same defenses, privileges, and immunities as was the school district. After examining the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 1—1 *et seq.*) and "An Act in relation to the establishment and maintenance of county and multiple-county public health departments" (Ill. Rev. Stat. 1985, ch. 111½, par. 20c *et seq.*), the court concluded that county health boards could regulate school cafeterias located within the county. This appeal followed.

Defendant argues that the legislature specifically delegated authority to regulate sanitation of school facilities to the State Board of Education (Board). Pointing to section 2—3.12 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 2—3.12), the defendant argues that regulations for building specifications to insure proper heating, ventilation, lighting, seating, water supply, toilet, and safety against fire are all entrusted to the Board. Thus, she argues that the Board is the proper body to regulate schools for safety and health purposes. She also points to section 2—3.25 of the School Code, which gives the Board power to promulgate standards relating to "the physical plant, heating, lighting, ventilation, sanitation, safety, equipment and supplies, instruction and teaching, curriculum, library, operation, maintenance, administration and supervision." (Ill. Rev. Stat. 1985, ch. 122, par. 2—3.25.) Defendant further argues that school districts are not separate or independent from the State, and, therefore, school districts are no more subject to local county ordinances than the State

itself in its functions.

■ We must reject the last argument because, as plaintiff has pointed out in its brief, a school district is a quasi-municipal corporation created by the State (*Molitor v. Kaneland Community Unit District 302* (1959), 18 Ill. 2d 11, 14, *cert. denied* (1960), 362 U.S. 968, 4 L. Ed. 2d 900, 80 S. Ct. 955), and just as the county is an agency created by the State, vested with only the powers conferred upon it by the State (*County of Cook v. City of Chicago* (1924), 311 Ill. 234, 240), so too the school district is a creature of the State vested with the powers conferred upon it by the State. We must determine which body has been vested with the authority to regulate sanitation practices of school cafeterias.

In examining sections 2—3.12 and 2—3.25 of the School Code, we note that neither provision grants specific authority to the Board or to the Superintendent of Education to provide sanitary regulations relating to school cafeterias. On the other hand, section 2 of "An Act in relation to public health" (Ill. Rev. Stat. 1985, ch. 111½, par. 22) provides that the State Department of Public Health has general supervision of the interests of health and lives of the people of the State. The Department may adopt, promulgate, repeal, and amend rules and regulations and make such sanitary investigations and inspections as may be deemed necessary to preserve and improve the public health. (Ill. Rev. Stat. 1985, ch. 111½, par. 22.) Under section 1 of "An Act in relation to the establishment and maintenance of county and multiple-county public health departments" (Ill. Rev. Stat. 1985, ch. 111½, par. 20c), a county health department may be established, and under section 14, that county health department may set up its own rules to protect and improve public health, shall enforce and observe all State laws pertaining to the preservation of health, and shall make all necessary sanitary and health investigations and inspections (Ill. Rev. Stat. 1985, ch. 111½, pars. 20c13(6), (8)). As the trial judge indicated, section 2 of "An Act in relation to public health" (Ill. Rev. Stat. 1985, ch. 111½, par. 22) specifically indicates that "sanitary investigations and inspections" and "sanitary practices" as used in the Act do not include or apply to "Public Water Supplies" or "Sewage Works" as defined in the "Environmental Protection Act." There is no similar exclusion regarding the School Code.

An opinion of the Illinois Attorney General (1982 Ill. Att'y Gen. Op. 151) addressed the issue of whether a county health department had the authority to inspect school cafeterias in the county to determine if they were in compliance with State and county public health laws or ordinances. The Attorney General concluded that pursuant to

"An Act in relation to establishment and maintenance of county and multiple-county public health departments" (Ill. Rev. Stat. 1981, ch. 111½, par. 20c *et seq.*) the county had authority to do all acts and make all regulations which might be necessary or expedient for the promotion of health or suppression of disease. That broad delegation of power found in the statute would, according to the Attorney General, enable the county to adopt regulations regarding sanitary practices of places providing food services within the county. It was further reasoned in the opinion that the fact that the State Department of Health was specifically authorized to regulate sanitary practices relating to drinking water, as well as sanitary practices relating to persons handling food served to the public, indicated that regulation of school cafeterias rested in the State Department of Health. In turn, the county health department, being authorized to enforce and observe all State laws, could regulate and inspect sanitary conditions and practices of school cafeterias, despite the general power granted to the Board of Education to set standards of sanitation for schools.

■ In a recent opinion (1986 Ill. Att'y Gen. Op. No. 86–004) the Attorney General concluded that the county may impose reasonable health regulations and licensing fees pertaining thereto upon schools located within the county. Where an issue of first impression is being resolved, well-reasoned opinions of the Attorney General are entitled to great weight. (*Decker v. University Civil Service System Merit Board* (1980), 85 Ill. App. 3d 208, 211.) We believe that these opinions are well reasoned, and we find them persuasive.

Defendant's arguments that recent opinions indicate that local governments may not regulate school districts cannot be sustained upon a close reading of the cases upon which she relies. In *Board of Education v. City of West Chicago* (1965), 55 Ill. App. 2d 401, 404, the court held that the city could not enforce its building code regulations against a school district because the legislature had expressly delegated regulation of the construction, specifications, and conditions of school buildings to the State Board of Education. A key distinction between the facts in that case and the facts here is that in *Board of Education* there was a specific, express delegation of authority by the legislature to the Board of Education to regulate the building of schools. Here, language in the School Code dealing with sanitation regulations is found in the context of a general provision relating to the physical plant, as well as to such things as curriculum and teaching. It is unclear, at best, whether these standards were meant to control the sanitary conditions of restaurants operated in the school buildings. See *Smith v. Board of Education* (1949), 359 Mo. 264, 268-

69, 221 S.W.2d 203, 205.

The second case cited by defendant in support of her argument that local governments are not generally able to regulate school districts is *Board of Education v. Carter* (1983), 119 Ill. App. 3d 857. In that case, the court held that the State Fire Marshall did not have authority to regulate certain conditions at a high school because that power to regulate was vested in the Board of Education. However, there it was noted that the Board of Education had specific authority to regulate all aspects of the construction and design of the building to promote fire safety. The Fire Marshall had general authority to regulate all buildings within Illinois. (119 Ill. App. 3d 857, 861-62.) Once again, then, in that case, unlike the one at hand, the more specific delegation of power was held to rest in the Board of Education.

■ Applying the rationale of the two cases cited by defendant to the facts here, the specific delegation of authority to the county board of public health to promulgate and enforce sanitation regulations which impact on the general public health would imply that the authority to regulate food service operations in a school would rest with the county board of health. The State Board's authority to regulate sanitation is very likely only to have been meant to extend to sanitation conditions of the building itself. Under accepted and established rules of statutory construction, the more specific provisions prevail over the more general ones in cases of conflict. *Board of Education v. Carter* (1983), 119 Ill. App. 3d 857, 861-62.

■ We note that the regulations promulgated by the State Board of Education, known as the Life Safety Code, have not been included in the record. However, we are confident that regardless of the nature of those regulations, the statute giving the Board authority to promulgate the regulations (Ill. Rev. Stat. 1985, ch. 122, par. 2—3.12) is sufficiently broad that the legislature must have meant for the local health department to have the authority to regulate sanitation practices of school cafeterias.

For the above-stated reasons, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

HOPF and INGLIS, JJ., concur.