OLD BEN COAL COMPANY, Plaintiff-Appellant, v. THE DEPARTMENT OF MINES AND MINERALS, Defendant-Appellee.

Fifth District   No. 5—89—0352

Opinion filed January 25, 1991.

Terry R. Black, of Campbell, Black, Carnine & Hedin, of Mt. Vernon, and Jeffrey C. Conrad, of Cleveland, Ohio, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Old Ben Coal Company, appeals from an order of the circuit court of Franklin County affirming the holding of a hearing officer of defendant, Department of Mines and Minerals. In this cause, plaintiff argues that while under an interim permit granted by defendant, it is not bound by the permanent regulations. We affirm.

The Congress enacted the Surface Mining Control and Reclamation Act of 1977 (30 U.S.C. §1211 *et seq.* (1988)) (hereinafter Federal Act) in August 1977. On August 11, 1978, the General Assembly passed Public Act 80–1342 (hereinafter interim Act) to participate in the initial regulatory program of the Federal Act. The interim Act amended the Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1989, ch. 96½, par. 4501 *et seq.*) approved September 17, 1971. The interim Act allowed defendant to issue interim permits for surface coal mining operation. Pub. Act 80–1342 §17, eff. Aug. 11, 1978 (adding Ill. Rev. Stat. 1979, ch. 96½, par. 4520).

Plaintiff sought interim permits for its mines No. 21, No. 24, and

No. 25, which were granted on September 17, July 22, and September 22, 1980.

On April 12, 1979, the permanent Federal regulations became effective. On June 1, 1980, the Illinois permanent Act, the Surface Coal Mining Land Conservation and Reclamation Act (Ill. Rev. Stat. 1981, ch. 96½, par. 7901 *et seq.*) (hereinafter permanent Act) replaced the interim Act. Under the permanent Act, defendant promulgated the Surface Coal Mining Land Conservation and Reclamation State Program Rules and Regulations (62 Ill. Adm. Code §1700.11 *et seq.* (1985)) (hereinafter permanent regulations)). The parties agree that the United States Secretary of the Interior conditionally approved these permanent regulations on June 1, 1982, citing 47 Fed. Reg. 23858 (June 1, 1982).

In July 1982, plaintiff applied for permanent permits. The applications were deemed administratively complete, but substantive problems continued to exist as of July 1984.

On April 6, 1984, defendant issued notice of violation No. 20—3—84 for mine No. 24. On April 25, 1984, defendant issued notice of violation No. 20—6—84 for mine No. 21. On May 15, 1984, defendant issued notice of violation No. 20—4—84 for mine No. 25. Each notice of violation alleged that plaintiff violated 62 Ill. Adm. Code §1817.122 by failing to notify surface owners and residents above the area of underground workings at least six months prior to mining. Plaintiff admits these violations, but argues that it is not governed by the regulation in question.

On October 19, 1984, a hearing was held. Following the hearing, both parties filed briefs with the hearing officer. On January 16, 1985, the hearing officer issued his decision holding that 62 Ill. Adm. Code §1817.122 applied to the mines in question at the time the notices of violation were issued. The officer further held that section 1817.122 was valid under section 1.02 of the permanent Act. (Ill. Rev. Stat. 1983, ch. 96½, par. 7901.02(c).) Finally, the officer affirmed all three notices of violation. The circuit court of Franklin County affirmed the hearing officer's determination in full on January 15, 1987, holding that the findings were not against the manifest weight of the evidence and the interpretation of law was reasonable. The circuit court granted plaintiff's motion to reconsider and remanded the case to the hearing officer to review the legality of defendant's enforcement in light of recent United States Department of the Interior Office of Hearings and Appeals cases submitted by plaintiff. The hearing officer concluded that these new cases do not affect his prior ruling. On April 27, 1989, the circuit court reaffirmed the hearing officer's decision.

Plaintiff argues that defendant erroneously applied a permanent regulation to it while it had an interim permit. Defendant responds that the statute in question requires compliance with all regulations, interim and permanent, by February 1, 1983.

■■ ■ In construing a statute or regulation, Illinois courts are guided by basic tenets of statutory construction. Normally, courts will try to give effect to every word, clause and sentence. (*Bauer v. H.H. Hall Construction Co.* (1986), 140 Ill. App. 3d 1025, 1028, 489 N.E.2d 31, 33.) We cannot adopt a construction which renders words or phrases superfluous or meaningless. (*In re Application of the County Collector* (1989), 132 Ill. 2d 64, 72, 547 N.E.2d 107, 110; *People v. Parvin* (1988), 125 Ill. 2d 519, 525, 533 N.E.2d 813, 815.) Where more than one construction can be placed on a statute, a court should select the construction which leads to a logical result and avoid that which would be absurd. (*Illinois Department of Revenue v. Country Gardens, Inc.* (1986), 145 Ill. App. 3d 49, 56, 495 N.E.2d 161, 166; *People v. Jones* (1985), 134 Ill. App. 3d 1048, 1051, 481 N.E.2d 726, 728.) As we stated in *Jones*:

> "The prime consideration in construing a statutory enactment is to give effect to the intent of the legislature. In ascertaining the legislature's intention, the entire statute must be considered, as well as the evil to be remedied and the object to be obtained." (134 Ill. App. 3d at 1051, 481 N.E.2d at 728.)

In addition, our courts have given great deference to the interpretation of an ambiguous statute by an agency charged with the administration and enforcement of the statute. (*Illinois Power Co. v. Illinois Commerce Comm'n* (1986), 111 Ill. 2d 505, 510-11, 490 N.E.2d 1255, 1257; *Chemed Corp. v. State of Illinois* (1989), 186 Ill. App. 3d 402, 410, 542 N.E.2d 492, 497.) Finally, perhaps the most basic tenet of statutory construction directs that the language of the statute should get its plain and ordinary meaning. *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton* (1985), 105 Ill. 2d 389, 396, 475 N.E.2d 536, 539.

Section 4.01 states:

> "General Requirement. Each person conducting underground mining operations shall as a minimum comply with all applicable performance standards set forth in this Article. Each permit issued under this Act to conduct underground mining operations shall require as a minimum that such operations meet all applicable requirements set forth in this Article." Ill. Rev. Stat. 1981, ch. 96½, par. 7904.01.

In light of the tenets outlined above, section 4.01 seems to require

each person conducting underground mining operations to comply with all applicable performance standards. Section 4.01 further requires each permit holder to meet all of the applicable requirements in article IV of the permanent Act (Ill. Rev. Stat. 1981, ch. 96½, pars. 7904.01 through 7904.11). Plaintiff urges that the only "applicable performance standards" which apply to interim permit holders are interim performance standards. To adopt plaintiff's construction, however, would render the first sentence of the section superfluous and meaningless. Moreover, it would allow plaintiff to mine without protecting those living on the land from subsidence. Such a result is absurd in light of what we believe to be the intent of both the United States Congress and the General Assembly. See Beck, *Illinois Coal Mine Subsidence Law Updated*, 1985 S. Ill. U.L.J. 379; Beck & Sigwerth, *Illinois Coal Mine Subsidence Law*, 29 De Paul L. Rev. 383 (1980).

■ Although not binding on this court, we are guided by Chief Judge Foreman's memorandum and order in the case of *Melvin v. Old Ben Coal Co.* (S.D. Ill. 1985), 610 F. Supp. 131. There, the court held that the General Assembly "clearly intended compliance with performance standards set forth in Article IV of the Illinois Permanent Act regardless of whether a permanent permit had been issued under the Act." (610 F. Supp. at 133.) Judge Foreman noted, as we do, that "[d]efendant would now have the Court interpret these provisions to reach the unreasonable result of authorizing it to ignore performance standards merely because the Department of Mines and Minerals is delinquent in processing permanent applications." (610 F. Supp. at 134.) We cannot sanction such an absurd result.

Plaintiffs argue that section 9.08 of the permanent Act (Ill. Rev. Stat. 1983, ch. 96½, par. 7909.08) in particular exempts interim permittees from the permanent regulations. According to plaintiff, this result is especially apparent when read together with section 1.02(c) of the permanent Act, *Consolidation Coal Co. v. Department of Mines & Minerals* (1987), 160 Ill. App. 3d 677, 514 N.E.2d 9, and cases of the Department of the Interior Office of Hearing and Appeals. Defendant responds that, to the contrary, section 9.08 conditions the continued validity of the interim permit upon compliance with the permanent regulations.

Section 9.08 states, in pertinent part:

"Transition. The Department shall provide for the orderly transition from 'The Surface-Mined Land Conservation and Reclamation Act', approved September 17, 1971, as amended, to this Act. Such rules shall as a minimum provide for tempo-

rary permit procedures, filing and application schedules and requirements, and time limits different from those set forth in this Act and which satisfy the requirements of the Federal Act and Regulations, for transition from the initial regulatory program to the permanent program. Such rules shall provide for the continued validity of permits and bonds issued under 'The Surface-Mined Land Conservation and Reclamation Act', approved September 17, 1971, as amended, in a manner which satisfies the requirements of the Federal Act and Regulations, and may provide for delay in the applicability of any provisions of this Act to mining and reclamation operations to the extent required if the State program is not approved under the Federal Act." (Ill. Rev. Stat. 1983, ch. 96½, par. 7909.08.)

Section 1.02(c) states:

"(c) It is also the purpose of this Act to establish requirements that are no more stringent than those required to meet the Federal Surface Mining Control and Reclamation Act of 1977 (PL 95—87)." Ill. Rev. Stat. 1983, ch. 96½, par. 7901.02(c).

■ Although section 1.02 declares general guidelines for construction of the permanent Act, section 9.08 states that the rules promulgated shall, "as a minimum," comply with the Federal Act and regulations. "Under accepted and established rules of statutory construction, the more specific provisions prevail over more general ones in cases of conflict." (*County of Winnebago v. Davis* (1987), 156 Ill. App. 3d 535, 539, 509 N.E.2d 143, 146.) Therefore, section 9.08's "as a minimum" prevails over the guidelines of section 1.02(c).

Neither of the sections cited in *Consolidated Coal* contain the words "as a minimum." (160 Ill. App. 3d at 680, 514 N.E.2d at 10.) Here, however, the General Assembly clearly set out the Federal Act and regulations as "a minimum." Illinois law, in fact, has been regulating subsidence questions since 1880. (*Wilms v. Jess* (1880), 94 Ill. 464; Beck & Sigwerth, *Illinois Coal Mine Subsidence Law*, 29 De Paul L. Rev. 383, 384-88 (1980).) Since 1975 alone, there have been six acts approved by the General Assembly that could relate to subsidence of underground mines. 29 De Paul L. Rev. at 410.

We are aware of the Department of the Interior Office of Hearing and Appeal cases which hold that interim permit holders are only bound by interim regulations, not permanent regulations. (*Citizens For the Preservation of Knox County* (June 5, 1984), 81 I.B.L.A. 209, 218-19 ("The interim program and the permanent program are separate regulatory regimes"); *Harman Mining Corp. v. Office of Surface*

*Mining Reclamation & Enforcement* (April 27, 1987), OHA Docket No. NX 5—103—R, slip op. at 2; *Lone Star Steel Co. v. Office of Surface Mining Reclamation & Enforcement* (January 9, 1987), OHA Docket No. TU 5—22—P, slip op. at 3, *rev'd on other grounds* (February 6, 1989), slip op. I.B.L.A. No. 87—284; *Josephine Coal Co. v. Office of Surface Mining Reclamation & Enforcement* (November 25, 1986), OHA Docket Nos. CH 0—52—R, NX 5—18—P, slip op. at 5-6, *aff'd* (October 30, 1989), 111 I.B.L.A. 316, 324; *Alabama By-Products Corp. v. Office of Surface Mining Reclamation & Enforcement* (May 6, 1986), OHA Docket Nos. NX 4—54—R, NX 5—93—R, NX 5—31—P, NX 5—32—P, NX 5—52—P, slip op. at 4; *Palmer Coking Coal Co. v. Office of Surface Mining Reclamation & Enforcement* (December 6, 1985), OHA Docket No. DV 5—5—R, slip op. at 3-4.) Nevertheless, the General Assembly, as noted above, intended the Federal Act and regulations to be the minimum boundaries in setting Illinois' regulations.

We must also consider the evil the General Assembly attempted to remedy as well. According to the Illinois Abandoned Mined Lands Reclamation Council:

> " 'Today, the effects of subsidence are being felt by many property owners throughout Illinois. Homes and other structures resting above or near land atop underground mines have been seriously damaged by coal mine subsidence. Entire structures have dropped or shifted as underground mines have collapsed. Foundations and walls have cracked, and many structures have been abandoned. Also, water mains, sewage pipes and gas lines have broken causing communities great hardship and economic loss.

> Mines which have been abandoned for decades are now causing severe subsidence problems. Although the mining companies usually avoid mining directly under communities, they did undermine areas around communities. As time passed, development occurred and today, residential subdivisions, industrial parks, and schools often rest a few hundred feet above abandoned mines.

> \* \* \*

> Problems related to subsidence will continue to occur in Illinois and will probably intensify as the mines age and as development expands across undermined areas.' " (Illinois Abandoned Mined Lands Reclamation Council Progress Report 1979/1980, quoted in Beck, *Illinois Coal Mine Subsidence Law Updated*, 1985 S. Ill. U.L.J. 379.)

Professor Beck further reports that suspected subsidence from underground coal mining was reported in 32 of the 69 Illinois counties which are undermined. This subsidence has resulted in land depression, standing water in depressed areas, surface drainage and tile line disruption, and reduced crop yields as well as structural damage to buildings, fences, bridges and roads. 1985 S. Ill. U.L.J. at 380.

■ In light of the specific language used in section 9.08 and the history behind it, we believe it is eminently appropriate for defendant to issue regulations more stringent than those required by the Federal Act.

■ Defendant promulgated rule 1700.11, which states that any person who conducts surface coal mining and reclamation operations on or after eight months from the date of approval of the State program shall, with certain exceptions, have a permanent permit. (62 Ill. Adm. Code §1700.11 (1985).) Defendant allowed an exception providing for the continued validity of an interim permit if, as a minimum, (1) a timely application for a permanent permit is filed, (2) defendant has not rendered an initial decision on that application, and (3) mining operations are in compliance with (a) the interim permit, (b) the Federal permanent Act, (c) the State permanent Act, and (d) the State permanent regulations. (62 Ill. Adm. Code §1700.11 (1985).) This regulation complies with the State permanent Act and requires plaintiff to meet the State permanent program requirements eight months after approval by the United States Secretary of the Interior. As noted above, the Secretary approved the program on June 1, 1982; therefore, plaintiff should have complied by February 1, 1983.

We believe that our decision today gives effect to every relevant word, clause and sentence of the permanent Act. We do not adopt a construction which renders words or phrases superfluous or meaningless. Our construction of the permanent Act leads to a logical result where more than one construction can be placed on the statute and avoids a result which would be absurd. Most importantly, we give effect to the intent of the legislature considering the entire statute as well as the evil to be remedied and the goals to be achieved. Finally, we note the agreement of Federal Chief Judge Foreman, and the approval of Illinois' regulatory scheme by the Secretary of the Interior.

For the foregoing reasons, the order of the circuit court of Franklin County is affirmed.

Affirmed.

RARICK, P.J., and HOWERTON, J., concur.