THE VILLAGE OF SAUGET, d/b/a American Bottoms Regional Wastewater Treatment Facility, Plaintiff-Appellee, v. ARNOLD COHN, Defendant-Appellant.

Fifth District   No. 5—91—0589

Opinion filed January 29, 1993.—Rehearing denied March 2, 1993.

Thompson & Mitchell, of Belleville (Donald E. Weihl, of counsel), for appellant.

Daniel J. Hayes, of Baker & Hayes, of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Defendant Arnold Cohn appeals from the trial court's judgment in favor of the Village of Sauget, for $247,279.33 in overdue sewer charges, $15,600 in attorney fees, and costs. We reverse.

The Village of Sauget (Sauget), a home-rule municipal corporation, owns and operates a regional sewage-treatment facility, Ameri-

can Bottoms Regional Wastewater Treatment Facility (American Bottoms). In September 1987, Sauget filed a complaint against defendant seeking users' charges due on property owned by defendant. Sauget's second amended complaint, filed November 29, 1990, contained 466 counts.

Counts I through 233 allege that as the record title holder of the 233 parcels of property which received sewer services from American Bottoms, defendant is personally liable for the user fees assessed against these properties and for Sauget's attorney fees in this case. Sauget's claim is based on its ordinances, enacted pursuant to its home-rule power, and on its regional agreement with the communities which contain defendant's property. The relevant Village of Sauget ordinances state:

Sauget, Illinois, Ordinance 536:

"*Section 2. Purpose.* The purpose hereof is to impose a charge for the use of, and the service to be provided by the AMERICAN BOTTOMS REGIONAL WASTEWATER TREATMENT FACILITY, which shall jointly and severally be paid by, and collected from, the Owner of, the Occupant of, and the Water User at, each Parcel of Real Estate \* \* \*.

\* \* \*

*Section 7. Liability for Charge.* (i) The owner of any Parcel of Real Estate in the Region, (ii) the Occupant, if any, of the Parcel of Real Estate and (iii) the Water User at that Parcel of Real Estate are, and shall be jointly and severally liable for all Treatment User Charges imposed hereunder.

Owner shall be defined to be the person who owns the record title to a given Parcel of Real Estate."

Sauget, Illinois, Ordinance 582:

"*Section 1.* Said Ordinance No. 536 be, and it is hereby, further amended by adding Section 20 hereto, said added Section to read as follows, to-wit:

*Section 20.* In the event the VILLAGE files suit to collect any unpaid charge, interest and late penalty fees, due under the provisions of this Ordinance as amended from time to time, the VILLAGE shall also be entitled to collect from the responsible party or parties and to have included in any such judgment, a reasonable fee for its attorney to be fixed by the court, incurred in preparing and filing any such suit, in prosecuting any such suit and in collecting any judgment rendered in the Village's favor in any such suit.

*Section 3.* This Ordinance shall be deemed to have become effective on the effective date of Ordinance No. 536; that is to say, to have been in full force and effect at all times from and after June 27, 1985."

Counts 234 through 466 allege alternatively that, as the owner of these 233 parcels of property, defendant was the user of the real estate and as such he is personally liable for the user fees assessed against these parcels and for Sauget's attorney fees. Sauget premises the alternative counts on division 141 of article 11 of the Illinois Municipal Code (Code), as amended in 1985. (Ill. Rev. Stat. 1991, ch. 24, par. 11—141—1 *et seq.*) Section 11—141—7 allows the "occupant or user of that real estate" to be sued for sewerage service fees and a reasonable attorney fee.

At trial, the parties stipulated that defendant is the record title holder of each of these parcels. The defendant did not dispute the value of the sewer service fees assessed against the property. Twenty counts, involving 10 parcels of property, were voluntarily dismissed by the plaintiff.

Sauget offered testimony describing the general history and daily operations at American Bottoms. General manager George Schillinger explained that while other waste-water treatment facilities have a delinquency or nonpayment rate of about 2% to 3%, the American Bottoms facility has a delinquency rate of 30%. Sauget's attorney offered testimony about his attorney fees.

The defendant testified that although he was the record title holder of all the properties, 11 of the cited properties were rental properties, 200 of the properties were being sold contract for deed, three of the titles were held for security for a down payment, and one was held by him as the nominee. In all cases, defendant testified that it was the tenant's or purchaser's responsibility to pay the utility bills, which included the sewer bills. The defendant also testified that the properties are located in either East St. Louis, Cahokia, Centreville or Alorton.

The trial court entered judgment in favor of the plaintiff. In a subsequent order, the trial court explained that the judgment for the plaintiff was entered on both the State-law counts and the ordinance counts. The court also entered judgment for the plaintiff for attorney fees.

On appeal, defendant argues that Sauget lacks the home-rule power to enact a valid ordinance imposing personal liability on him because his property is located outside the municipality's corporate boundaries. He also argues that he cannot be personally liable for

sewer charges because he was not the recipient of the services. Finally, he contends that the trial court improperly awarded attorney fees to the plaintiff.

Article VII, section 6(a), of the 1970 Illinois Constitution grants power to a home-rule unit. It provides in part:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, §6(a).

These powers are to be liberally construed. (Ill. Const. 1970, art. VII, §6(m).) Even a liberal construction of Sauget's home-rule powers, however, does not justify the application of Sauget's ordinances to the defendant in this case.

Sauget cites *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6, *Forsberg v. City of Chicago* (1986), 151 Ill. App. 3d 354, 502 N.E.2d 283, and *Chicago Health Clubs, Inc. v. Picur* (1987), 155 Ill. App. 3d 482, 508 N.E.2d 742, in support of its ordinance. We note that the supreme court has reversed *Picur*. (*Chicago Health Clubs, Inc. v. Picur* (1988), 124 Ill. 2d 1, 528 N.E.2d 978.) In *Mulligan*, the supreme court validated a Cook County ordinance on the retail sale of alcoholic beverages in the county. In doing so, it held that the tax was not an extraterritorial exercise of the municipality's taxing power. (*Mulligan*, 61 Ill. 2d at 558, 338 N.E.2d at 16.) Similarly, in *Forsberg*, the court upheld a boat-mooring tax against a challenge that it was assessed against visitors who were not necessarily residents of Chicago. (*Forsberg*, 151 Ill. App. 3d at 361, 502 N.E.2d at 290.) The court held that a tax on individuals who reside outside Chicago, but who may enter Chicago, is not extraterritorial. *Forsberg*, 151 Ill. App. 3d at 361, 502 N.E.2d at 290.

■ These cases stand for the proposition that a home-rule community may impose a tax on services rendered within it or on sales to customers within its corporate boundaries who are parties to the transaction which results in liability. These cases do not stand for the proposition that a home-rule community, which provides sewage-treatment services to other communities pursuant to an agreement with these communities, may apply its ordinances to any record title owner of property located in a serviced community. Sauget may not apply its ordinances to parties simply because its ordinances would hold those parties liable for sewer-service fees.

Although proposed at the Sixth Illinois Constitutional Convention by the Committee on Local Government, language specifically limiting a home-rule unit's exercise of power to its corporate boundaries was not adopted. In *City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 338 N.E.2d 19, the supreme court held that this omission did not automatically confer extraterritorial sovereign or governmental powers on home-rule units. Instead, the court held that "whatever extraterritorial governmental powers home rule units may exercise were to be granted by the legislature." *Van Natta*, 61 Ill. 2d at 485, 338 N.E.2d at 21.

Sauget's status as a home-rule municipality does not give it the power to enforce its ordinances extraterritorially. If Sauget is to have the power to enforce its ordinances against the defendant, that power must have been specifically granted by the legislature or it must result from a power granted by the legislature. The legislature has not specifically granted such a power. It has, however, granted the corporate authorities of each municipality the right to contract with one another for sewage collection and treatment. (Ill. Rev. Stat. 1991, ch. 24, par. 11—147—1.) These contracts may be entered into "upon such terms as may be agreed upon between them." (Ill. Rev. Stat. 1991, ch. 24, par. 11—147—1.) In addition, section 11—141—7, which addresses rates and charges, states that when "users are residents of another municipality with whom there is a contract for use and service of the sewerage system, then such charges or rates shall be made in accordance with the terms of the contract." Ill. Rev. Stat. 1991, ch. 24, par. 11—141—7.

Sauget has entered into a regional agreement to provide sewage-treatment services to nearby counties and villages. By way of this agreement, the Village of Sauget will have the power, if any, to enforce its ordinances against the defendant. The "1977 Regional Sewage Treatment Agreement," as amended in 1982, authorizes Sauget to own, operate and fund a regional sewage-treatment plant. The 1982 amendments are at issue here. Paragraph E states:

"E. Commencing no later than June 30, 1983, the Village may enforce against *users* in * * * such pretreatment, sewer use and user rate ordinances as may be reasonable and necessary or as may be required under applicable law and regulations * * *." (Emphasis added.)

Amendment E gives Sauget the ability to enforce against users only. The agreement does not define user. However, we must conclude that, in the context in which it is employed in this amendment, absentee owners of real estate are not users. And, in fact Sauget does not

contend that they are. Sauget's argument is that it may enforce its own ordinances against defendant because it owns the regional treatment plant. We conclude, however, that as to customers not located within its corporate boundaries, Sauget may use only the enforcement powers granted to it by the agreement. The agreement gives Sauget the power to enforce its ordinances only against users.

■■ In holding that "user," as employed in this agreement, does not include the record title holder of the real estate, unless he is the user of the services, we note that the trial court concluded that "user," without any qualifying phrases, "is logically presumed to be that of a user of the services." This is consistent with the Black's Law Dictionary definition of "user." Black's defines a "user" as "[t]he actual exercise or enjoyment of any right, property, drugs, franchise, etc." (Black's Law Dictionary 1383 (5th ed. 1979).) Because the defendant is not the person who receives the services, he is not the person who actually exercises or enjoys the benefits provided by American Bottoms. He is, at most, an indirect beneficiary of the services, *i.e.*, his properties are more marketable because they have indoor plumbing.

Sauget's agreement with the other municipalities gives it the power to enforce only against users. We hold that a user is a user of the services. The defendant is not a user of the services. He is not personally liable under the terms of the regional agreement for the services provided by American Bottoms to the residents of the property even though he is record title owner of that property.

■■ Sauget's second theory of liability is premised on the language of section 11—141—7 of the Code. That section gives the municipality "the power, from time to time, to sue the occupant *or user* of that real estate in a civil action to recover money due for sewerage services." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 24, par. 11—141—7.) Sauget argues that "user of that real estate" should be defined to include the owner of the property whether or not the owner is the person who actually receives the services. We disagree.

The statutory language Sauget relies upon has not been construed in Illinois. In construing a statute, courts try to give effect to every word, clause and sentence. The language of the statute should get its plain and ordinary meaning and the construction should not render a word or phrase superfluous or meaningless. (*Old Ben Coal Co. v. Department of Mines & Minerals* (1991), 207 Ill. App. 3d 1088, 1091, 566 N.E.2d 813, 815.) In addition, the court must give prime consideration to the intent of the legislature. *Old Ben Coal Co.*, 207 Ill. App. 3d at 1091, 566 N.E.2d at 815.

The statute at issue provides for liens against the real estate upon or for which services were provided if service charges become delinquent. The municipality may foreclose this lien in an effort to collect delinquent charges. However, if the municipality obtains a personal judgment against the "occupant or user of that real estate," that judgment releases the lien on the real estate for the amount of the judgment. Ill. Rev. Stat. 1991, ch. 24, par. 11—141—7.

The plaintiff argues that it is inconsistent to allow the real estate owner to be liable for delinquent fees by virtue of the lien but to prevent him from being held personally liable for the delinquent fees. We disagree. The statute makes the owner of the property liable for sewer services provided to a delinquent tenant only to the extent of the value of the property to which the services were provided. It does not follow that the municipality should be able to elect to sue the owner, who is not the user of the services, and thereby obtain a judgment lien against the entirety of that owner's personalty and realty in satisfaction of a debt incurred by another. We cannot accept that when the legislature drafted section 11—141—7 it intended such a result.

This is particularly true in light of the terms of the Sanitary District Revenue Bond Act (Ill. Rev. Stat. 1991, ch. 42, par. 319.1 *et seq.*). The language of section 7 of that act (Ill. Rev. Stat. 1987, ch. 42, par. 319.7) was virtually identical to the language of section 11—141—7, upon which Sauget relies, until it was amended, effective July 29, 1988 (Pub. Act 85—1136). This provision of section 7 now reads:

"The sanitary district also has the power, from time to time, to sue the *owner*, occupant or user of that real estate, *or a person receiving any direct or indirect benefit from such services*, in a civil action to recover money due for sewerage services, plus a reasonable attorney's fee, to be fixed by the court; provided, however, that the sanitary district shall give notice of its intention to bring such action to the *owner of record* by regular mail not less than 7 days prior to filing such civil action." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 42, par. 319.7.

When a statute is ambiguous on its face, as is section 11—141—7, a court should look to similar statutes as an aid in construction. (*Di Falco v. Board of Trustees of the Firemen's Pension Fund of the Wood Dale Fire Protection District No. One* (1988), 122 Ill. 2d 22, 27, 521 N.E.2d 923, 925.) An amendatory change in the language of a statute creates a rebuttable presumption that it was intended to change the law as it theretofore existed. *Weast Construction Co. v. Industrial Comm'n* (1984), 102 Ill. 2d 337, 340, 466 N.E.2d 215, 216.

Applying these rules of construction, and comparing these two statutes, we conclude that section 11—141—7 cannot be interpreted as Sauget asserts. In the original section 7, the legislature did not give the sanitary district the power to sue the owner of the real estate. Likewise, in section 11—141—7, it did not grant such power. The fact that the legislature amended section 7 to specifically include the owner indicates that the legislature did not believe that an owner was included in the definition of "occupant or user of that real estate." Further, the fact that the legislature did not amend section 11—141—7, which contained virtually identical language, to also include the term "owner" indicates that the legislature did not intend to grant such power under that section.

Based on a comparison of these two statutes, we conclude that "user of that real estate" does not also mean owner of that real estate. The legislature does not use these terms interchangeably, and we likewise decline to do so.

■ Finally, the defendant appeals from the judgment, in favor of plaintiff, for $15,600 in attorney fees. This judgment was entered on both the statutory and ordinance counts. Because we hold that the terms of the regional agreement govern Sauget's enforcement powers with respect to the applicability of Sauget's own ordinances and because the agreement does not provide that Sauget may collect attorney fees, we reverse the judgment entered on the ordinance counts. Alternatively, attorney fees are inappropriate in this case because we hold the following analysis equally applicable to Sauget's ordinances.

Plaintiff is not entitled to attorney fees based on the statutory counts. Although the provision for attorney fees in section 11—141—7 has not been construed, a similar provision in section 7 was construed to apply only to the collection of money obviously due to a sanitary district.

In *Greater Peoria Sanitary & Sewage Disposal District v. Kellstedt* (1985), 130 Ill. App. 3d 1002, 1005, 474 N.E.2d 1267, 1270, the court called it unreasonable to allow attorney fees when there is a genuine issue as to the amount due the district. To hold otherwise, the *Kellstedt* court said, "would be to penalize a consumer who disputes the user charges assessed against him and would risk a violation of the consumer's due process rights." (*Kellstedt*, 130 Ill. App. 3d at 1005-06, 474 N.E.2d at 1270.) To determine whether a dispute is genuine, the trial court should consider the quality of the evidence submitted by the disputing party and the general merits of the defense. *Greater Peoria Sanitary & Sewage Disposal District v. Hermann* (1987), 153 Ill. App. 3d 398, 403, 505 N.E.2d 769, 773.

While it is true that there is no dispute about the actual amount of sewer fees owed, it is impossible to deny that there is a genuine dispute about who must pay these delinquent sewage-treatment fees. To require the defendant to pay attorney fees would be akin to punishing him for contesting, honestly and successfully, the fact that he was not the person liable. The legislature intended the attorney fees provision in section 11—141—7 to be part of the municipality's remedy in the collection of overdue sewer bills. We do not believe that it also intended the provision to discourage or penalize individuals, such as defendant, with meritorious defenses to a municipality's charges.

For the foregoing reasons, we reverse the trial court's judgment in favor of the Village of Sauget. We hold that neither the statute nor the ordinances empower it to hold defendant, the record title holder of the 233 parcels at issue, personally liable for the value of sewer services provided to those parcels. We also reverse the award of attorney fees to Sauget. Each side will bear its own costs.

Reversed.

WELCH and W.A. LEWIS, JJ., concur.