2001-NMCA-084

33 P.3d 916

**PUEBLO OF PICURIS,**
Plaintiff–Appellant,

v.

**NEW MEXICO ENERGY, MINERALS AND NATURAL RESOURCES DEPARTMENT, and Oglebay Norton Specialty Minerals, Inc., Defendants–Appellees.**

No. 21,278.

Court of Appeals of New Mexico.

Sept. 14, 2001.

Certiorari Denied, No. 27,172, Oct. 23, 2001.

Douglas W. Wolf, Douglas Meiklejohn, Geoffrey H. Fettus, NM Environmental Law

Center, Santa Fe, NM, Simeon Herskovits, Western Environmental Law Center, Taos, NM, Roger Flynn, Jeff Parsons, Western Mining Action Project, Boulder, CO, for Appellant.

Ted Apodaca, Assistant General Counsel, Energy, Minerals and Natural Resources Department, Stephen S. Hamilton, Louis W. Rose, Montgomery & Andrews, Santa Fe, NM, for Appellees.

## OPINION

BOSSON, Chief Judge.

{1} In this case brought under the New Mexico Mining Act (the Mining Act), NMSA 1978, §§ 69–36–1 to –20 (1993, as amended through 1999), we decide for the first time how protesting parties challenge the issuance of a mining permit. In particular, we decide whether the challenge may be brought directly to court by a citizen suit, or must proceed instead through a course of administrative review and appeal to the district court. The district court interpreted the Mining Act to require administrative review and dismissed this citizen suit. We conclude that the district court was correct and affirm the dismissal.

## BACKGROUND

{2} Oglebay Norton Specialty Minerals Inc. is the new owner of a mica mine located in Taos County. The former owner of the mine, Franklin Industrial Materials, applied for the mining permit that began this litigation. Oglebay has been duly substituted for Franklin as a party Defendant. Because the legal positions of the two mining companies do not differ materially in this litigation, we will refer to them jointly as the Mining Operator.

{3} Pursuant to the Mining Act, the Mining Operator duly applied for a mining permit with the Director of the Mining and Minerals Division (the Director) of the New Mexico Energy, Minerals and Natural Resources Department (the Department). *See* § 69–36–9(E). The Mining Operator submitted its permit application as an existing mining operation instead of a new mining operation because the mine had produced marketable minerals for at least two years

between 1970 and 1993, when the Mining Act became law. *Compare* § 69–36–3(E) *with* § 69–36–3(I) (defining an existing mining operation and a new mining operation). As part of the permitting process, the Mining Operator submitted a closeout plan detailing how the Mining Operator would restore the physical environment of the permit area after closure of the mine. *See* § 69–36–11. Like the rest of the permit application, the closeout plan had to earn the Director's approval before the permit could issue. *See id.*

{4} The Pueblo of Picuris (the Pueblo) is located in the vicinity of the proposed permit area, and the Pueblo opposes the permit because of the impact the mine will have on the environment and other vital interests of the Pueblo. Under the Mining Act, the Pueblo qualifies as a "person" having interests that are or may be "adversely affected" by the issuance of this permit, and thus, the Pueblo has standing to oppose the permit and maintain this legal action. *See* §§ 69–36–14(A), –15(A).

{5} The Pueblo's principal concern focuses on what it contends are critical inadequacies in the proposed closeout plan. Specifically, the Pueblo protests that the closeout plan is unworkable and fails to set aside sufficient space to stockpile waste rock that will be removed from the pit over the anticipated life of the mine. Given what the Pueblo claims is an insufficient stockpile space, the Pueblo then argues that the permit area for the proposed mine should be significantly reduced to accommodate what stockpile space is available.

{6} Illuminating secondary objectives behind its protest, the Pueblo points out that if the Mining Operator subsequently seeks to expand its operation beyond a reduced permit area, it "would be subject to the much more stringent standards required of expansions of existing units beyond approved design limits." Thus, after exhausting a reduced permit area, the Mining Operator would have to meet more exacting, contemporary reclamation standards and "best management practices" that do not pertain to an existing mine operating within the area of its initial permit. *See* § 69–36–7(D). According

to the Pueblo, by underestimating the stockpile space needed, the Mining Operator can secure a larger permit area and purposefully defeat the tougher environmental standards. In the Pueblo's eyes, this is manipulating the permitting process by using "sleight of hand."

{7} During the permitting process the Pueblo expressed these and other concerns to the Director. The Pueblo also submitted written comments directed specifically to the closeout plan and its alleged deficiencies. Despite these concerns, the Director approved the application and issued a permit for the larger area requested by the Mining Operator.

{8} Within a matter of months, the Pueblo filed this civil action in district court seeking declaratory and injunctive relief against both the Department and the Mining Operator (Defendants) alleging violations of the Mining Act as well as various rules and regulations of the Mining Commission (the Commission). *See* § 69–36–6 (creating the Commission). Defendants then moved to dismiss because the Pueblo had not petitioned the Commission for administrative review within the time frame specified in the Mining Act. Agreeing with Defendants, the district court dismissed the Pueblo's complaint with prejudice. The Pueblo appeals from that dismissal.

## DISCUSSION

■ {9} As authority for its suit, the Pueblo cites to Section 69–36–14(A)(1), (2) (hereafter "Section 14"), entitled "Citizens suits," which states:

A person having an interest that is or may be adversely affected may commence a civil action on his own behalf to compel compliance with the New Mexico Mining Act [69–36–1 to 69–36–20 NMSA 1978]. Such action may be brought against:

(1) the department of environment, the energy, minerals and natural resources department or the commission alleging a violation of the New Mexico Mining Act or of a rule, regulation, order or permit issued pursuant to that act;

(2) a person who is alleged to be in violation of a rule, regulation, order or permit issued pursuant to the New Mexico Mining Act.

In its complaint filed with the district court, the Pueblo alleges that issuance of this mining permit violated the Mining Act as well as various rules and regulations of the Commission and the Department. Therefore, according to the Pueblo, its complaint fits comfortably within the language of Section 14 as an action brought against the Department and the Mining Operator "to compel compliance with the New Mexico Mining Act." The Pueblo also contends that the legislative purpose of the citizens—suit provision—to render government officials and mining companies accountable—supports broad access to the courts and immediate judicial review of the permitting process.

{10} We assume that the legislature did intend to grant comprehensive judicial relief to adversely affected citizens under the Mining Act, and there is no question that the Pueblo falls within the ambit of that grant. We also acknowledge that the Pueblo's complaint alleges "violations of the Act" in one form or another as that phrase is utilized in Section 14. However, this acknowledgment only begins our inquiry.

{11} In Section 69–36–15(A) (hereafter "Section 15"), promulgated contemporaneously with Section 14, the Mining Act provides for "[a]dministrative review":

"Any order, penalty assessment or issuance or denial of a permit by the director pursuant to the New Mexico Mining Act [69–36–1 to 69–36–20 NMSA 1978] shall become final unless a person who is or may be adversely affected by the order, penalty assessment or issuance or denial of a permit files, within sixty days from the date of notice of the order, penalty assessment or issuance or denial of a permit, a written petition to the commission for review of the order, penalty assessment or issuance or denial of a permit by the director."

In addition, Section 15 provides for a timely hearing on the petition, either before the Commission or its hearing officer, accompanied by a grant of subpoena power and the taking of evidence on the record. The pro-

cess culminates in the Commission's findings of fact and final decision which can be appealed on the record to district court. *See* § 69–36–16(C).

{12} In the case before us, administrative review was available to the Pueblo but, for reasons not apparent from the record, the Pueblo did not pursue that remedy. The real question of this appeal is the effect of opportunity lost. The Pueblo views Sections 14 and 15 as twin alternatives from which the adversely affected party may choose to begin a citizen suit in district court. The Pueblo's case rests entirely on whether administrative review under Section 15 is mandatory or discretionary. Defendants emphasize that administrative review under Section 15 is the only remedy the Mining Act makes available for the specific purpose of challenging the issuance or denial of a permit. Not surprisingly, Defendants argue that the clear language of Section 15 requires the Pueblo to petition the Commission for administrative review instead of proceeding directly with a citizen suit.

{13} Defendants' argument is rooted in the language and purpose of the Mining Act. The legislative use of the phrase "shall become final" in Section 15 implies that administrative review by the Commission is a condition precedent to a subsequent challenge in court. Perhaps, as the Department suggests in its brief, an adversely affected party could file a citizen suit under Section 14 simultaneously with a petition for administrative review under Section 15, but that question is not before us. It is difficult to see how the clear and unambiguous language of Section 15 does not foreclose separate litigation over the same permit and its issuance.

{14} In interpreting a statute, we are guided by statutory sections which focus specifically on a particular subject, and we look only secondarily to more general references elsewhere within the same statute. *See City of Albuquerque v. Redding,* 93 N.M. 757, 759, 605 P.2d 1156, 1158 (1980), *overruled on other grounds by Bybee v. City of Albuquerque,* 120 N.M. 17, 20, 896 P.2d 1164, 1167 (1995); *Kerr–McGee Nuclear Corp. v. Prop. Tax Div.,* 95 N.M. 685, 690–91, 625 P.2d 1202, 1207–08 (Ct.App.1980) (Hendley,

J., concurring in part and dissenting in part). We attempt to interpret sections of the same statute in a harmonious manner. *See Key v. Chrysler Motors Corp.,* 1996–NMSC–038, 121 N.M. 764, 769, 918 P.2d 350, 355, *aff'd in part & rev'd in part on other grounds,* 2000–NMSC–010, ¶ 22, 128 N.M. 739, 998 P.2d 575. We indulge in the assumption that when the legislature has before it all sections of a statute at the same time, it intends to give equal weight to each section so as to produce a harmonious product free from internal contradictions and inconsistencies. In the absence of contrary evidence, we assume that the legislature used specific language for a reason, and that it had a purpose in preferring a specific course of action with regard to a certain issue or remedy. *See State v. Santillanes,* 2001–NMSC–018, ¶¶ 7, 11, 130 N.M. 464, 27 P.3d 456; *Gordon v. Sandoval County Assessor,* 2001–NMCA–044, ¶¶ 18–19, 130 N.M. 573, 28 P.3d 1114. This legislative preference supplants a more general, all-encompassing remedy found in the statute that is designed for a general problem or issue.

{15} Here, the citizen-suit section is just such an all-encompassing legislative approach that applies across the board to any "violation of the Act." Without more direction in the Mining Act, a fair inference might permit a citizen suit to challenge the issuance of a permit. But the legislature did provide more specific direction, and it did so in the very next section enacted at the same time it created Section 14. *See* 1993 N.M. Laws, ch. 315, §§ 14, 15. Whereas a citizen suit under Section 14 is available for a wide variety of wrongs the Department or the Commission might commit, or actions that they might fail to take, Section 15 limits administrative review to three specific acts of the Director alone: "order, penalty assessment or issuance or denial of a permit."

{16} Two of the acts under Section 15, penalty assessments and permit issuance, refer to specific statutory functions of the Director that comprise only a small portion of the Director's overall responsibilities. *See* § 69–36–9 (describing Director's responsibilities). For example, administrative review pertains only to permit *issuance;* presumably questions arising over permit *compli-*

*ance* (including the Director's role) can be raised directly by a citizen suit under Section 14. The Mining Act also provides specialized treatment for penalty assessments imposed by the Director. *See* § 69–36–17 (providing for penalty assessments by the Director or the Commission, an appeal to the Commission, and a special de novo appeal from the Commission to district court). Again, for certain limited functions, the legislature has specified an administrative remedy first, which the protesting party must pursue before proceeding to court.

{17} We follow the legislative lead with respect to administrative and judicial review for the narrow scope of Director activity identified in Section 15. We presume that the legislature had a purpose when it addressed permits and penalty assessments in a separate section of the Mining Act, and when it provided a special procedure for their challenge and appeal. In our view, it would be inconsistent and illogical for the legislature to fashion such a specific course of action for these limited challenges, only to allow citizen suits to by-pass legislative direction at a whim. At the very least, such a suggestion requires more evidence of legislative intent than we have before us.

{18} We also draw a fair inference from the language of Section 14 in support of how we interpret Section 15. Under Section 14(A)(2), citizen suits are authorized for a "violation of a rule, regulation, order or permit issued pursuant to [that A]ct." The specific reference to "permit" in Section 14 can only refer to a citizen suit that seeks to enforce compliance with the terms and conditions of a permit. Reference to "violation of a ... permit" presumes, in turn, that the permit has already issued. Thus, a fair reading of the two sections assigns a different process according to the purpose of the challenge. Issuance of the permit must be challenged under Section 15, while enforcing that permit, once issued, is assigned to citizen suits under Section 14(A).

{19} We also draw guidance from the legislative purpose behind the two sections of the Mining Act. *See State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994). To be sure, each provides a remedy for adversely affected citizens, and it is apparent that accessible, effective judicial review of agency action is one of the cornerstones of the Mining Act. However, one can glean an additional legislative purpose behind reviewing permit issuance administratively instead of by direct litigation. *See Gordon*, 2001–NMCA–044, ¶¶ 18–19, 130 N.M. 573, 28 P.3d 1114 (resolving conflicting legislative policies).

{20} Permit decisions like the one before us usually involve a multitude of scientific and other technical evidence regarding prospective mining activity. In creating the Commission, the Mining Act designates certain permanent members who have presumptive expertise or experience in the area of mining. *See* § 69–36–6(A) (identifying as voting members of the Commission the director of the bureau of mines and mineral resources of the New Mexico institute of mining and technology, the secretary of environment, the state engineer, the commissioner of public lands, the director of the department of game and fish, and two members of the public representing environmental and mining interests).

{21} We draw a reasonable inference from the mission of the Mining Act and the make-up of the Commission to conclude that the legislature wanted to use the skills and experience of its own commissioners to inform the process of permit issuance. Courts often defer to administrative review when, as here, the issues are fact-intensive and even abstruse. *See State ex rel. Norvell v. Ariz. Pub. Serv. Co.*, 85 N.M. 165, 171, 510 P.2d 98, 104 (1973). Developing a comprehensive record at the administrative level can assist the court in addressing complex matters on appeal. We observe that Commission hearings are empowered with subpoena authority and plenary discovery procedures to help develop a verbatim factual record and comprehensive findings of fact by the Commission. *See* § 69–36–15(D), (E).

{22} Even a cursory review of the Mining Act shows that the Commission has the ultimate responsibility to ensure that mining operators comply with the Act and with the Commission's comprehensive regulations. *See* § 69–36–7 (describing duties of the Com-

mission). Likewise, permit responsibility ultimately rests with the Commission. *See id.* The Commission is not created as a mere rubberstamp of the Director or the Department. To the contrary, we have previously characterized the Director as one "who is in all respects an employee of the Commission" because the Commission has such authority over the Director's exercise of discretion. *Old Abe Co. v. N.M. Mining Comm'n,* 121 N.M. 83, 94, 908 P.2d 776, 787 (Ct.App.1995).

{23} Given the legislative allocation of responsibility weighted heavily on the Commission, it stands to reason that the legislature would repose in that same Commission the power of review necessary to carry out its duties. Put another way, policy reasons persuade us, as they appear to have persuaded the legislature, that a core function like the issuance of a mining permit should not be the decision of the Director alone, but should involve the Commission by direct administrative review.

{24} The Department points out that administrative review is a special, expedited procedure, requiring that the hearing be held within 60 days after filing the petition so that mining operators are not held hostage to interminable litigation before beginning operations. The Department suggests that an appeal process circumscribed by finite temporal boundaries is important to mining operators and to the state's interest in encouraging responsible mining. *See* § 69–36–2 (stating that purposes of the Mining Act include promoting responsible reclamation and mining which is "vital to the welfare of New Mexico"). The Department also predicts chaos if we were to allow collateral litigation to challenge permit issuance years after its approval, when industry activity has already begun in reliance on the permit. Such concerns articulate additional reasons the legislature may have had in mind when it created an administrative appeal process especially for permit issuance.

{25} Thus, there is every reason to conclude that the legislature acted consciously when it created a process of administrative review as the chosen method to challenge permit issuance. On the other hand, we perceive little prejudice to the protesting citizen from exhausting administrative review before seeking judicial review. No such prejudice has been made apparent to us during the course of this appeal.

{26} In response to Defendants' arguments, the Pueblo first protests that if it cannot sue, then as a practical matter, it will be left without any means to challenge the permit. In the Pueblo's case, the 60 day period under Section 15 for petitioning the Commission has long since passed. We acknowledge that our holding will preclude the Pueblo from any further challenge to the issuance of the permit. However, the Pueblo can still look to Section 14 if grounds exist to assert a right under that Section for relief in regard to compliance with the mining permit.

{27} The Pueblo also tries to make a case that Section 15 is merely a notice of appeal statute, providing a time limit for appeals to the Commission in the event the protestant elects to pursue an administrative review. As we have previously indicated, the language and purpose of the Mining Act gives Section 15 a reach far beyond merely establishing a time to appeal.

{28} The Pueblo also refers us to an analogous statute, the Surface Mining Act, on the theory that the two acts set up similar structures to regulate mining activity in New Mexico, and therefore, legislative treatment of an issue in one act may illuminate legislative intent regarding that issue in the other. *See* NMSA 1978, §§ 69–25A–1 to –36 (1979, as amended through 2000) (repealed effective July 1, 2006) (providing for regulation principally of surface coal mining). Our attention is particularly drawn to the citizen-suit section of the Surface Mining Act. *See* § 69–25A–24. We agree that the language of this citizen-suit section is remarkably similar to Section 14 of the Mining Act, and we accept the Pueblo's invitation to treat the two acts as in pari materia. *See* NMSA 1978, § 12–2A–20(B)(6) (1997) (providing that in addition to considering the text and purpose of a statute, courts are to inquire into "a statute or rule on the same or a related subject").

{29} Yet reliance on the language of the Surface Mining Act does not aid the Pueblo's cause. While both acts have a comprehen-

sive and similarly worded citizen-suit provision, the two acts are strikingly dissimilar in regard to administrative review. *Compare* § 69–36–15 *with* § 69–25A–29(G). Under the Surface Mining Act, an appeal to the surface coal mining commission (similar in structure to the Commission in the Mining Act) is permissive only. *See* § 69–25A–29(G) ("Any person who is aggrieved by a decision of the director *may* appeal to the commission for relief." (Emphasis added.)). The Surface Mining Act has none of the language in Section 15 of the Mining Act that the Director's actions "shall become final" unless a petition for review is filed with the Commission.

{30} Commission review under the Surface Mining Act is available for any "decision" of the director. *See* § 69–25A–29(G). In contrast, Section 15 of the Mining Act limits administrative review to an "order, penalty assessment or issuance or denial of a permit by the director." As we have already indicated, the discriminating focus of Section 15 of the Mining Act leads us to conclude that the legislature intended administrative review to apply to all questions concerning permit issuance.

{31} We also observe an asymmetry between the two acts in regard to the parties that adversely affected citizens can sue. The Surface Mining Act expressly empowers citizens to file suit directly against the director of the mining and minerals division, and this is the same director whose decisions the citizen "may" elect to appeal administratively to the commission. *Compare* § 69–25A–24(A) *with* § 69–25A–29(G). Because both sections of the Surface Mining Act apply to the same actions by the same director, it would be easier to conclude that the legislature purposefully designed two avenues of redress—the citizen suit and administrative appeal—as equally acceptable options for a citizen to select under that Act.

{32} With the Mining Act, however, the affected citizen is authorized to sue the "Department" without any mention of the Director, whereas administrative review only applies to actions of the Director. *Compare* § 69–36–14(A) *with* § 69–36–15(A), (C). While, presumably, the Department can be sued for the alleged violations of its Director, the Mining Act's use of different terminology for the two sections, in contrast to the Surface Mining Act, affords additional evidence that the legislature intended to carve out a specific, though perhaps small, universe of Director activity for which administrative review and citizen suit are not synonymous.

## CONCLUSION

{33} For the foregoing reasons, we are persuaded by Defendants' arguments, and particularly those of the Department, that the Mining Act required the Pueblo to pursue a timely administrative review with the Commission. The Pueblo having failed to do so, it is barred from pursuing this litigation. We affirm the judgment of the district court dismissing the Pueblo's complaint.

{34} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Judge, CYNTHIA A. FRY, Judge.