NOTICE

Decision filed 09/24/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-09-0207

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| CITIZENS OPPOSING POLLUTION, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Clinton County. |
| | ) |
| v. | ) No. 08-CH-56 |
| | ) |
| EXXONMOBIL COAL U.S.A. and | ) |
| THE ILLINOIS ENVIRONMENTAL | ) |
| PROTECTION AGENCY, | ) Honorable |
| | ) William J. Becker, |
| Defendants-Appellees. | ) Judge, presiding. |

_____

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Citizens Opposing Pollution, a not-for-profit citizens group, filed a six-count complaint against defendants, ExxonMobil Coal U.S.A. (Exxon) and the Illinois Environmental Protection Agency (the Agency), seeking to obtain injunctive relief to cause Exxon to remove and properly dispose of slurried coal production waste allegedly leaching into the community drinking water supply known as the Pearl Sand Aquifer located in Clinton County. Counts I through IV are directed against Exxon and contend that Exxon violated various provisions of the Surface Coal Mining Land Conservation and Reclamation Act (Act) (225 ILCS 720/1.01 *et seq.* (West 2008)). Count V is directed against the Agency and also alleges a violation of the Act. Count VI is directed against Exxon and claims that Exxon violated various provisions of the Water Use Act of 1983 (Water Use Act) (525 ILCS 45/1 *et seq.* (West 2008)). Exxon moved to dismiss counts I through IV pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)) and count VI pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)). The

1

Agency moved to dismiss count V pursuant to both section 2-615 and section 2-619. The circuit court of Clinton County granted defendants' motions to dismiss, and plaintiff now appeals.

Plaintiff raises the following issues: (1) whether the trial court erred in dismissing plaintiff's complaint on the basis that there is no statutory authorization which allows plaintiff to challenge violations of the Act, (2) whether the trial court erred in finding that plaintiff's challenges to Exxon's violations of the Act constitute a permit challenge that must be handled through the administrative review process, (3) whether the trial court erred in dismissing count V directed against the Agency, and (4) whether the Water Use Act has an implied private right of action so that the trial court erred in dismissing count VI. We affirm in part, reverse in part, and remand with directions.

BACKGROUND

Monterey Coal, a division of Exxon, has owned Mine No. 2, a coal mine located near Albers, since 1977. From 1977 until August 1996, when the mine closed, a coal preparation plant and two coal refuse and slurry disposal areas operated on the property. The refuse disposal areas (RDAs) encompass a surface area of approximately 350 acres. The RDAs consist of two separately permitted areas known as RDA-1 and RDA-2. Coal refuse was placed in RDA-1 from 1977 until 1996 and placed in RDA-2 from 1988 until 1996. On November 16, 1984, the Illinois Department of Mines and Minerals approved Permit No. 57, which, *inter alia*, authorized the creation of RDA-1. On September 6, 1986, the Illinois Department of Mines and Minerals approved Permit No. 183, which authorized the creation of RDA-2. Thereafter, the Illinois Department of Mines and Minerals ceased to exist; its powers are now with the Illinois Department of Natural Resources (Department).

As far back as 1979, Monterey Coal acknowledged the possibility of seepage from the refuse disposal area to the shallow aquifer and the possible contamination of the aquifer

2

from slurry impoundment. As the voluminous record indicates, over the years there have been numerous state and federal adjudications pertaining to Mine No. 2 and reclamation efforts. On December 21, 1999, the Agency issued a violation notice which alleged that Monterey Coal violated groundwater quality standards. Without admitting to the alleged violations, Monterey Coal entered into a covenant with the Agency. On June 24, 2002, the Agency approved a corrective action plan with a groundwater management zone. On March 3, 2004, after a public hearing and comment period, the Department approved revised permits with regard to Permit No. 57 and Permit No. 183. Exxon began the required reclamation, which was substantially completed in December 2006. According to Exxon, more than $28 million and thousands of man-hours were spent on completing the reclamation of the RDAs. Nevertheless, surrounding property owners continue to complain that their groundwater was being contaminated and that the approved plans and the permits have not adequately protected the hydrologic groundwater balance.

As far as the immediate history of this appeal, the action was originally filed on August 8, 2008, by plaintiff, a group of citizens living near the mine who are concerned about the quality of life, specifically, the water supply, in their rural community. The original action was an 18-count complaint filed against Exxon, the Agency, and the Department. The complaint requested that the court grant injunctive relief, that Exxon be required to submit a permit-renewal application that would meet the performance standards of the law, and that the Department be required to approve only a permit that meets the performance standards stated in the law, which plaintiff alleged are not being met.

Defendants filed motions to dismiss. Both Exxon and the Department claimed that the mining permits had expired and that there was no need for renewal. The revised permits had indeed expired on January 8, 2005, and October 16, 2006. Accordingly, plaintiff responded with a request for leave to amend and a motion to voluntarily dismiss the

3

Department. The trial court allowed the motions, and an amended complaint was filed on December 22, 2008. In count I, plaintiff seeks injunctive relief and asks the court for the following relief:

"(1) Find that:

a) The post[]mining land use, for the land where the impoundments of coal mine waste are located, does not meet the definition of 'Pasture Land['][;]

b) The land that is currently coal mine waste impoundments had a pre[]mining land use that was higher or better use than pasture land;

c) The current land use for the coal mine waste impoundments are [*sic*] as impoundments or undeveloped land and are [*sic*] not allowed as appropriate post[]mining land uses;

d) The impoundments present an actual or probable hazard to public health or safety;

e) The impoundments pose an actual or probable threat of water diminution or pollution;

(2) Order Exxon to develop and implement a written plan that resolves the ongoing violations of law by meeting the standards of the Illinois Mining Act, the applicable regulations implementing the Illinois Mining Act, and any Orders of this Court;

(3) Mandate that the plan to be developed and implemented by Exxon must restore the land to a condition capable of supporting row crops or a use that is higher or better than row crops;

(4) Require Exxon to remove the permanent impoundments known as RDA-1 and RDA-2 and properly dispose of the wastes contained therein at a facility that

4

meets the standards of a sanitary landfill thereby ensuring the protection of groundwater;

(5)    Award Plaintiff the costs of litigation, including attorneys' fees (at the same hourly rate as Exxon's attorneys charge in this case) and fees for expert witnesses and consultants for bringing forth a claim of importance to the effective enforcement of the Illinois Mining Act; and

(6)    Grant such other relief as this Court deems appropriate and as may be requested as the case develops further."

In count II, plaintiff also seeks injunctive relief and asks the court for the following relief:

"(1)    Find that:

    a)    Impoundments constructed of coal mine waste or intended to impound coal mine waste may not be retained permanently as part of the approved post[]mining land use;

    b)    Exxon has permanently retained two impoundments of fine coal mine waste slurry that are impounded by coarse coal mine waste; and

    c)    The permanent retention of the two coal mine waste impoundments is an ongoing violation of the Illinois Mining Act.

(2)    Require Exxon to develop and implement a written plan that resolves the violations of the law by meeting the standards of the Illinois Mining Act, the applicable regulations implementing the Illinois Mining Act, and any Orders of this Court;

(3)    Mandate that Exxon develop and implement a written plan to provide for the removal of the impoundments known as RDA-1 and RDA-2 with proper disposal of such wastes contained therein at a facility that meets the standards of a sanitary landfill and that is therefore protective of groundwater ***."

5

Count III seeks injunctive relief and asks the court for the following relief:

"(1)   Find that Exxon has:

    a)   Permanently retained two impoundments of fine coal mine waste slurry that are impounded by coarse coal mine waste;

    b)   Permanently graded Mine #2's property in a manner that does not restore the affected land to its approximate original contour;

    c)   Performed or avoided grading at the site in a manner that does not support the proposed post[]mining uses;

(2)   Require Exxon to develop and implement written plan that resolves the violations of the law by meeting the standards of the Illinois Mining Act, the applicable regulations implementing the Illinois Mining Act, and any Orders of this Court;

(3)   Mandate that Exxon implement a written plan that provides for the restoration of the affected land to a grade of no more than 10% in any location ***."

In count IV, plaintiff requests the court for the following relief:

"(1)   Find that Exxon is in violation of the Illinois Mining Act;

(2)   Find that Exxon's 'substantially completed' reclamation of Mine No. 2 fails to minimize disturbances to hydrologic balance of groundwater by:

    a)   Continuing to leach excessive quantities of sulfates, chlorides, total dissolved solids, iron[,] and manganese into the groundwater beneath the mine site and neighboring properties;

    b)   Pumping 4 million gallons of water from the Pearl Sand Aquifer each week, thus altering the flow of the aquifer and altering the recharge capacity of the aquifer; and

    c)   Allowing 85% of precipitation to infiltrate and mix with the

6

waste[,] allowing contaminants to be leached into the aquifer.

(3)  Require Exxon to develop and implement a written plan that resolves violations of law by meeting the standards of the Illinois Mining Act, the applicable regulations implementing the Illinois Mining Act, and any Orders of this Court;

(4)  Require Exxon to develop and implement a written plan to provide for the removal of the impoundments known as RDA-1 and RDA-2 with proper disposal of such wastes contained therein at a facility that meets the standards of a sanitary landfill and that is therefore protective of groundwater;

(5)  Mandate that Exxon provide for active treatment of the groundwater plume, during the time in which it removes the impoundments and any necessary time thereafter, such that Exxon restores all of the water in the Pearl Sand Aquifer to Class I Groundwater Quality standards ***."

In count V, directed against the Agency, plaintiff requests the court for the following relief:

"(1)  Find that the Groundwater Management Zone [the Agency] issued to Exxon fails to minimize disturbances to the hydrologic balance at the mine site and in associated offsite areas by:

a)  Continuing to leach excessive quantities of sulfates, chlorides, total dissolved solids, iron[,] and manganese into the groundwater beneath the mine site and neighboring properties;

b)  Pumping 4 million gallons of water from the Pearl Sand Aquifer each week, thus altering the flow of the aquifer and altering the recharge capacity of the aquifer; and

c)  Allowing 85% of the precipitation to infiltrate and mix with the waste[,] allowing contaminants to be leached into the aquifer.

7

(2)     Find that the Groundwater Management Zone violates the Illinois Mining Act.

(3)     Find that the Groundwater Management Zone issued to Exxon by [the Agency] fails to meet the requirements of 35 Ill. Adm. Code [§]620.250 in the following ways:

    a)     the approved corrective action does not mitigate the impairment caused by the release of contaminants from the site;

    b)     the approved corrective action is not adequate to mitigate the impairment caused by the release of contaminants from the site;

    c)     the corrective action is not being performed in a timely manner;

    d)     the corrective action is not being performed in an appropriate manner;

    e)     the groundwater management zone is to be in place indefinitely.

(4)     Require [the Agency] to immediately revoke the Groundwater Management Zone issued to Exxon Mine #2;

(5)     Mandate that any Groundwater Management Zone issued by [the Agency] must comply with all statutes and regulations of the State of Illinois;

(6)     Require any Groundwater Management Zone issued by [the Agency] have a defined end date with no active measure to take place after said date ***."

In count VI, plaintiff seeks injunctive relief and asks the court to compel Exxon's compliance with the Water Use Act by following the rule of reasonable use of groundwater and specifically requests the court for the following relief:

"(1)     Find that Exxon's extraction of 4 million gallons of groundwater each week is *per se* unreasonable;

(2)     Find that by extracting 4 million gallons of groundwater per week and diverting it into a nearby river in order to allow continued leaching of contaminants into groundwater is wasteful;

8

(3)     Find that extracting 4 million gallons of groundwater per week and diverting it into a nearby river in order to allow continued leaching of contaminants into groundwater is malicious;

(4)     Find that extracting 4 million gallons of groundwater per week from the Pearl Sand Aquifer for a facility approximately 1.26 square miles exceeds the land owner's fair share of artificial wants;

(5)     Mandate that Exxon develop and implement a written plan that does not require the extraction of more than 100,000 gallons of groundwater per day ***."

As with count I, all the additional counts also seek costs, fees, and any other relief the court deems appropriate.

On January 13, 2009, defendants filed their respective motions to dismiss the amended complaint. Defendants claimed *res judicata* and collateral estoppel based upon prior proceedings and argued that plaintiff failed to timely exhaust administrative remedies. Plaintiff filed a response to the motions, and the trial court heard oral arguments from the parties on the motions to dismiss. On April 28, 2009, the trial court entered an order granting a dismissal on all the counts. The trial court specifically stated as follows:

"The court disagrees with Plaintiff's assertion that [section] 8.05(a) [of the Act (225 ILCS 720/8.05(a) (West 2008))] allows a suit to challenge what [the Department] has previously approved through approval of the permit and reclamation plan. The plaintiff's allegations against Exxon in Counts I through IV on their face may be violations of 'this Act' as contemplated within [section] 8.05(a); however, Exxon has brought forth affirmative matter, specifically, the issuance of the permit which includes the reclamation plan to show that Exxon's conduct was authorized by the Act. The permit is not to issue unless [the Department] is satisfied that the

9

requirements of the Act are met.  225 ILCS 720/2.08 [(West 2008)].  To allow Plaintiff's interpretation of [section] 8.05(a) to stand would render the permit process meaningless and require circuit courts throughout the State to relitigate permit issues after those matters had been addressed by [the Department]."

The trial court goes on to state as follows:

"[Section] 8.05(a) read in *pari materia* with [sections] 8.05(d) and 8.10 [of the Act (225 ILCS 720/8.05(d), 8.10 (West 2008))] means that permit challenges must be handled through the [a]dministrative [r]eview process. [Section] 8.05(a) authorizes suit only if a person attempted to operate without a permit or if a governmental agency refused to pursue a violation [of] the Act, rule, order[,] or permit."

The trial court also dismissed counts V and VI.  Plaintiff filed a timely notice of appeal.

ANALYSIS

We first note that in reviewing the dismissal of a complaint under either section 2-615 or section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2008)), we apply a *de novo* standard.  *Dopkeen v. Whitaker*, 399 Ill. App. 3d 682, 684, 926 N.E.2d 794, 797 (2010); *R-Five, Inc. v. Shadeco, Inc.*, 305 Ill. App. 3d 635, 639, 712 N.E.2d 913, 915 (1999).  A motion to dismiss under section 2-615 tests the legal sufficiency of the complaint whereas a motion to dismiss under section 2-619 admits the legal sufficiency of the complaint but asserts an affirmative defense outside the complaint that serves to defeat the cause of action.  *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361, 919 N.E.2d 926, 931-32 (2009).  Under either section, we accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from the facts against the nonmoving party.  *Dopkeen*, 399 Ill. App. 3d at 684, 926 N.E.2d at 797.

The first issue raised by plaintiff is whether the trial court erred in dismissing plaintiff's complaint on the basis that there is no statutory authority which allows plaintiff

to challenge violations of the Act. Plaintiff argues the trial court's ruling that the only challenge a citizen can make to a flagrant disregard of the statutorily mandated performance standards of the Act is to challenge noncompliance with the Department-issued permits during the permitting process is simply wrong. Plaintiff insists that a permit, whether meeting applicable standards or not, legal or illegal, expired or current, should never have the effect of eliminating and overruling substantive performance standards required by statute and that the subject environmental violations should not be allowed to continue unabated and unchallenged in perpetuity. Plaintiff specifically contends that it should be allowed to file a civil action for enforcement under section 8.05 of the Act. Exxon responds that the trial court properly dismissed counts I through IV of the amended complaint because plaintiff failed to challenge the Department's approval of those revised permits as required by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)). Exxon further replies that the dismissal of counts I through V was proper because plaintiff's claims are moot due to the substantial completion of the reclamation plan and the expiration of the revised permits approving it and because plaintiff failed to join the Department, which Exxon contends is a necessary party. After careful consideration, we agree with plaintiff.

### A. The Act

Section 8.05 of the Act provides in pertinent part as follows:

"Civil Actions. (a) Any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this Act against any governmental instrumentality or agency which is alleged to be in violation of the provisions of this Act or of any rule, order[,] or permit issued under this Act[] or against any other person who is alleged to be in violation of this Act or of any rule, order[,] or permit issued under this Act. \*\*\*

(b) Any person having an interest which is or may be adversely affected may

11

commence a civil action against the Department on his own behalf to compel compliance with this Act where there is alleged a failure of the Department to perform any act or duty under this Act which is not discretionary with the Department. ***

(c) The court, in issuing any final order in any action brought under this Section, may award costs of litigation (including attorney and expert witness fees) to any party, on the basis of the importance of the proceeding and the participation of the parties to the efficient and effective enforcement of this Act. ***

(d) Any person who is injured in his person or property through the violation by any operator of any rule, order, or permit issued pursuant to this Act may bring an action for damages (including reasonable attorney and expert witness fees). ***

(e) Any action brought under this Section may be brought only in the county in which the mining operation complained of is located.

(f) In any action under this Section, the Department shall have an unconditional right to intervene.

(g) No existing civil or criminal remedy for any wrongful action shall be excluded or impaired by this Act.

(h) Nothing in this Section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any of the provisions of this Act and the rules adopted under this Act[] or to seek any other relief (and including relief against the United States or the Department)." 225 ILCS 720/8.05 (West 2008).

Here, plaintiff filed a civil action for enforcement under the above statute and prayed for injunctive relief.

Plaintiff's complaint was a multicount complaint, alleging essentially that the

12

mandated duties of Monterey Coal were not fulfilled, that Monterey Coal failed to restore the land, and that it was continuing to cause the hydrologic imbalance of groundwater and the Pearl Sand Aquifer in violation of the Act. In the complaint, plaintiff does not attack the issuance of the permits but challenges performance requirements under the Act. Article XI, section 2, of the Illinois Constitution accords plaintiff standing; it specifically states as follows:

> "Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law." Ill. Const. 1970, art. XI, §2.

The Illinois Supreme Court has recognized that this section of the Illinois Constitution gives standing to an individual to bring an environmental action for a grievance common to members of the public. See *Glisson v. City of Marion*, 188 Ill. 2d 211, 720 N.E.2d 1034 (1999).

Plaintiff challenges Exxon's compliance with the permits, not the actual issuance of the permits. Thus, plaintiff's lawsuit against Exxon sounds in enforcement as opposed to regulatory action. In *Old Ben Coal Co. v. Department of Mines & Minerals*, 207 Ill. App. 3d 1088, 566 N.E.2d 813 (1991), the plaintiff coal company argued that while it was under an interim permit granted by the defendant, it was not bound by permanent regulations. We disagreed, finding that such a result would be absurd. We specifically stated as follows:

> "Although not binding on this court, we are guided by Chief Judge Foreman's memorandum and order in the case of *Melvin v. Old Ben Coal Co.* (S.D. Ill. 1985), 610 F. Supp. 131. There, the court held that the General Assembly 'clearly intended compliance with performance standards set forth in Article IV of the Illinois Permanent Act ***.' (610 F. Supp. at 133.) Judge Foreman noted, as we do, that

13

'[d]efendant would now have the Court interpret these provisions to reach the unreasonable result of authorizing it to ignore performance standards merely because the Department of Mines and Minerals is delinquent in processing permanent applications.' (610 F. Supp. at 134.) We cannot sanction such an absurd result." *Old Ben Coal Co.*, 207 Ill. App. 3d at 1092, 566 N.E.2d at 815-16. Similarly, in the instant case, Exxon wants us to ignore continued environmental violations simply because permits have been issued.

Counts I through IV and count VI sound in enforcement as opposed to regulatory violations and allege various violations of applicable statutory requirements under the Act. We find that section 8.05 of the Act permits such a challenge and that the trial court erred in dismissing these counts. Furthermore, we disagree with the trial court's determination that plaintiff's lawsuit must be dismissed because it is a matter which must be handled through the administrative review process pursuant to section 8.10 of the Act.

Section 8.10 specifically provides as follows:

"Review under Administrative Review Law. All final administrative decisions of the Department under this Act shall be subject to judicial review pursuant to the Administrative Review Law, as amended, and the rules adopted under it, *except that the remedies created by this Act are not excluded or impaired by any provision of the Administrative Review Law*." (Emphasis added.) 225 ILCS 720/8.10 (West 2008).

"In construing a statute or regulation, Illinois courts are guided by basic tenets of statutory construction. Normally, courts will try to give effect to every word, clause[,] and sentence." *Old Ben Coal Co.*, 207 Ill. App. 3d at 1091, 566 N.E.2d at 815. Here, the last clause in section 8.10 provides that the Administrative Review Law does not impair the prosecution of the instant case. Pursuant to section 8.05, we find that plaintiff can seek direct enforcement to remedy the alleged ongoing violations of the Act.

14

Exxon relies on *Pueblo of Picuris v. New Mexico Energy, Minerals & Natural Resources Department*, 2001-NMCA-084, 131 N.M. 166, 33 P.3d 916, in support of its argument that courts reject collateral litigation on permitting decisions. We first point out that a decision of a foreign jurisdiction is not binding on Illinois courts. See *People v. Christiansen*, 116 Ill. 2d 96, 130-31, 506 N.E.2d 1253, 1268 (1987). Second, we note that the citizens suit in *Pueblo of Picuris* was a challenge to the *issuance* of the permit. It was filed by a citizens group within a matter of months after a permit was issued and a closeout plan was approved. The plaintiff failed to pursue a timely administrative review of the permit and was, therefore, barred from pursuing a citizens suit. The New Mexico court distinguished between a lawsuit challenging the issuance of a permit and one challenging compliance, specifically stating as follows:

"In response to Defendants' arguments, the Pueblo first protests that if it cannot sue, then as a practical matter, it will be left without any means to challenge the permit. In the Pueblo's case, the 60[-]day period under Section 15 for petitioning the Commission has long since passed. We acknowledge that our holding will preclude the Pueblo from any further challenge to the issuance of the permit. However, the Pueblo can still look to Section 14 if grounds exist to assert a right under that Section for relief in regard to compliance with the mining permit." *Pueblo of Picuris*, 2001-NMCA-084, ¶26, 131 N.M. at 171, 33 P.3d at 921.

The New Mexico court recognized and applied the difference between a lawsuit challenging the permitting process and one challenging compliance.

In the instant case, there is no dispute that the permits have expired. Exxon challenged plaintiff's first complaint on that very basis. Plaintiff acknowledged that the permits had expired, and plaintiff filed an amended complaint sounding in enforcement. Nevertheless, defendants contend the instant case constitutes a collateral attack on the

permits. We disagree.

## B. *Res Judicata*

The preclusive effect of a prior adjudication on a subsequent claim or cause of action falls under the law of *res judicata*. *Res judicata* is separated into two distinct doctrines: (1) true *res judicata*, known as "claim preclusion," and (2) collateral estoppel, known as "issue preclusion." *People v. Moore*, 184 Ill. App. 3d 102, 104, 539 N.E.2d 1380, 1381 (1989), *rev'd on other grounds*, 138 Ill. 2d 162, 561 N.E.2d 648 (1990). Both serve the same purpose, which is to promote judicial economy and prevent repetitive litigation. *Moore*, 184 Ill. App. 3d at 104, 539 N.E.2d at 1381. Collateral estoppel applies when a party participates in two separate and consecutive cases arising out of different causes of action and some controlling factor or question material to the determination of both cases has been adjudicated against the party in the former suit by a court of competent jurisdiction. *Stathis v. First Arlington National Bank*, 226 Ill. App. 3d 47, 53, 589 N.E.2d 625, 630 (1992). However, *res judicata* will not apply in cases in which it would be fundamentally unfair to do so, and parties will not be collaterally estopped unless the precise facts and issues were determined in the prior judgment. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390-91, 757 N.E.2d 471, 477-78 (2001).

We agree with plaintiff's contention that Exxon's arguments regarding *res judicata* and collateral estoppel are simply an attempt to divert our attention from the real issue: whether environmental violations are ongoing and continuing at Mine No. 2. First, we point out that Exxon has never been a party to the previous litigation concerning Mine No. 2. Second, we note that despite the permits and the $28 million cleanup efforts, plaintiff insists that Exxon has not properly disposed of the impounded coal production waste and that waste is leaking into the Pearl Sand Aquifer, which supplies the community with drinking water. At this point in the litigation, we must accept plaintiff's well-pled facts as true. The trial court erred

16

in dismissing the instant litigation.

Moreover, we disagree with Exxon's claim that the issuance of a valid permit by the Agency is a blanket defense against any enforcement action. The New Mexico case cited by Exxon acknowledged that there must be some method for a plaintiff to assert his or her rights when there is noncompliance. In Illinois, that method is a citizens suit filed pursuant to section 8.05 of the Act. Plaintiff's argument that environmental violations cannot be allowed to continue unabated and unchallenged into perpetuity simply because a permit has been issued is compelling, and we find the trial court erred in dismissing counts I through IV. These counts, including the groundwater claims in count IV, are issues of noncompliance with the Act and are of an ongoing nature. Count VI also sounds in enforcement and alleges various violations of the Water Use Act.

### C. Water Use Act

The trial court dismissed count VI of plaintiff's amended complaint, stating that the Water Use Act provides no private right of action. The Water Use Act requires that groundwater withdrawal must be done following the "reasonable use" rule. 525 ILCS 45/6 (West 2008). The Water Use Act specifically defines "reasonable use" as "the use of water to meet natural wants and a fair share for artificial wants. It does not include water used wastefully or maliciously." 525 ILCS 45/4(g) (West 2008) (now 525 ILCS 45/4 (West Supp. 2009)). Taking the allegations in plaintiff's complaint as true, which we are required to do at this point, Exxon is withdrawing four million gallons of water per week from the Pearl Sand Aquifer in order to keep contaminated groundwater within the boundaries of the permit.

Four factors are to be considered in determining whether a private right of action may be implied from a statute:

"Implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one

17

the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460, 722 N.E.2d 1115, 1117-18 (1999). Courts will imply a private remedy where a clear need to effectuate the purpose of a statute exists. *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 393, 718 N.E.2d 181, 185 (1999).

Considering the four factors listed above and the need to effectuate the purpose of the Act, we find the trial court erred in dismissing count VI on the basis that the Water Use Act provides no private right of action. We believe section 8.05 of the Act specifically allows such enforcement actions. Accordingly, we find the trial court erred in dismissing counts I through IV and count VI.

### D. Necessary Party

As to the argument of both Exxon and the Agency that the Department is a necessary party to this litigation, we point out that each party filed a motion to dismiss the first complaint on the basis that the mining permits expired and there was no need for renewal. Plaintiff then filed a request for leave to amend and a motion to voluntarily dismiss the Department, both of which were granted. We agree with plaintiff that the Department can easily be added by either Exxon or the Agency or the Department can seek to intervene. We also agree with plaintiff that a dismissal for the failure to add the Department as a necessary party is drastic and unjust at this point, and we refuse to affirm the trial court's dismissal on this basis.

### E. Count V

We must also consider whether the trial court erred in dismissing count V directed against the Agency. Plaintiff contends section 8.05(a) also gives plaintiff the authority to sue the Agency; however, much like Exxon's arguments, the Agency asserts that plaintiff has not

18

pled facts that the Agency is violating the Act, that any challenge to the groundwater management zone was required to be brought under administrative review, which plaintiff failed to do, and that prior proceedings serve as *res judicata* and collateral estoppel to bar further limitation concerning the issuance of the groundwater management zone.

We find no need to go over our findings with regard to several arguments previously addressed in this opinion. We do address, however, the Agency's argument that an administrative appeal to the Illinois Pollution Control Board followed by an administrative review in the courts is the only avenue for directly reviewing a groundwater monitoring zone. This simply is not true. Section 8.05 of the Act allows a citizens group to file a lawsuit for violations of the Act. Count V specifically charges as follows:

"The granting of the Groundwater Management Zone violates the Illinois Mining Act by requiring an operator to disturb the hydrologic balance at the mine site and associated offsite areas. These violations will continue unabated unless and until this Court grants injunctive relief that brings about compliance with all applicable statutory provisions and regulations cited herein."

Plaintiff asks, *inter alia*, in count V for the court to find that the groundwater management zone violates the Act.

On the other hand, portions of count V constitute a collateral attack on the permit previously issued by the Agency. For example, count V specifically asks for a finding that the groundwater management zone issued to Exxon by the Agency fails to meet the requirements of section 620.250 of Title 35 of the Illinois Administrative Code (35 Ill. Adm. Code §620.250 (West CD-ROM August 1997)). To the extent that count V is a collateral attack on the issuance of the permits, the trial court was correct in dismissing it; however, because there is clearly a cause of action based on what is alleged in count V, we believe that the dismissal should be without prejudice. We, therefore, remand with directions to allow

19

plaintiff to file an amended count V containing enforcement allegations, as opposed to allegations constituting a collateral attack on the issuance of permits.

CONCLUSION

For the foregoing reasons, we hereby reverse the judgment of the circuit court of Clinton County that dismissed counts I, II, III, IV, and VI. We hereby affirm the dismissal of count V, but we modify the dismissal to be without prejudice. We remand with directions to allow plaintiff to file an amended count V and for other proceedings consistent with this opinion.


Affirmed as modified in part and reversed in part; cause remanded with directions.


WELCH and CHAPMAN, JJ., concur.

NO. 5-09-0207

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| CITIZENS OPPOSING POLLUTION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 08-CH-56 |
| | ) | |
| EXXONMOBIL COAL U.S.A. and | ) | |
| THE ILLINOIS ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, | ) | Honorable |
| | ) | William J. Becker, |
| Defendants-Appellees. | ) | Judge, presiding. |

---

**Opinion Filed**:          September 24, 2010

---

**Justices**:          Honorable Richard P. Goldenhersh, P.J.

Honorable Melissa A. Chapman, J., and
Honorable Thomas M. Welch, J.,
Concur

---

**Attorney for Appellant**

Penni S. Livingston, Livingston Law Firm, 5701 Perrin Road, Fairview Heights, IL 62208

---

**Attorneys for Appellees**

Raymond L. Massey, Peter S. Strassner, Paul T. Sonderegger, Thompson Coburn, LLP, One US Bank Plaza, Suite 2600, St. Louis, MO 63101; Kurt E. Reitz, Heath H. Hooks, Thompson Coburn, LLP, 525 West Main Street, P.O. Box 750, Belleville, IL 62222 (attorneys for ExxonMobil Coal U.S.A.)

Lisa Madigan, Attorney General, State of Illinois, Michael A. Scodro, Solicitor General, Brian F. Barov, Assistant Attorney General, 100 West Randolph Street, 12th Floor, Chicago, IL 60601 (attorneys for The Illinois Environmental Protection Agency)